Robert T Mills (Arizona Bar #018853)
Sean A Woods (Arizona Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona, 85014
Telephone (480) 999-4556
docket@millsandwoods.com
*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Garcia, et al.<br><br>Plaintiff,<br><br>vs.<br><br>The State of Arizona, et al,<br><br>Defendants. | Case No. 2:13-cv-1591-PHX-DJH (DMF)<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br>(Assigned to the Hon. Deborah M. Fine) |

Plaintiff David Garcia ("Plaintiff"), by and through undersigned counsel, hereby submits his reply to Defendants Objection To Plaintiff's Motion For Leave To Amend Complaint. This motion is supported by the following memorandum of Points and Authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

On November 15, 2016, Plaintiff filed his Motion For Leave To Amend Complaint ("Motion"). (Doc. 65). Plaintiff attached his proposed Second Amended Complaint ("SAC") to his Motion as Exhibit A. (Doc. 65–1). Defendant objected to Plaintiff's Motion asserting that Plaintiff's proposed SAC is futile for two reasons: (1) Plaintiff's Count V is supposedly deficient in linking nine (9) additional corrections officers to a constitutional deprivation; and (2) Plaintiff's Count III supposedly fails to link the additional corrections officers to the September 12, 2014 riot. (Doc. 66 at 3-4). However,

Plaintiff has alleged sufficient facts in his SAC to satisfy the *Twombly* standard with respect to each additional corrections officer named in Count III. Defendants also mischaracterize Count V as a 42 U.S.C. § 1983 negligence claim, when on its face Count V is a common law negligence claim against the state of Arizona and each of the nine (9) supervisors[1]. Further, while Plaintiff plead that at all relevant times, Defendants were acting within the scope of their employment by the State of Arizona (Doc 65-1 ¶ 19), the facts as plead by Plaintiff in Count V can be inferred that the individually named Defendants were acting outside the scope of their employment in the context of hiring, training and supervision. However, even if this Court finds that Count V should be dismissed as to the individually named Defendants because this Court finds that their actions were committed in the scope of their employment, Count V should still stand against the State of Arizona. As demonstrated herein, Plaintiff's claims are not futile, and therefore, this Court should grant Plaintiff's Motion for Leave to Amend Complaint.

Furthermore, Defendants have raised an objection only to Count III and Count V of Plaintiff's SAC, but have requested that this Court deny Plaintiff's leave to amend in whole. If the Court should find any deficiencies in Count III and V, Plaintiff requests leave to amend Count III and V and further requests this Court grant Plaintiff's Motion for Leave to Amend Complaint regarding Counts I, II, IV, and VI of the SAC.

II.     **LEGAL ARGUMENT**

   A.     **Legal Standard**

Federal Rule of Civil Procedure 15 provides that leave to amend should be 'freely granted' when justice so requires, a provision that should be applied with "extreme liberality," *BCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). In exercising discretion, "a court must be guided by the underlying purpose of Rule 15—to

---

[1] Upon further review of the draft SAC, Plaintiff realizes that the State of Arizona was inadvertently left out of the caption listing the Defendants and further states that it was his intent to include the State of Arizona in the caption as evidenced by its inclusion in the following paragraphs of Count V.

facilitate decision on the merits." *Howey v. U.S.*, 481 F.2d 1187, 1190 (9th Cir. 1973) quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99 (1957). The burden is on the party opposing amendment to show why amendment should not be granted. *BCD*, 833 F.2d at 187. *See also* J.W. MOORE ET AL, MOORE'S FEDERAL PRACTICE § 15.14[1] (3d ed. 1998) ("[D]istrict judge[s] should freely grant leave to amend when justice requires, absent a substantial reason to deny."). In analyzing a Rule 15 motion, a court should generally draw all inferences in favor of granting a motion for leave to amend. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

  **B.** **Plaintiff's Claims Are Not Futile Because He Has Properly Plead Counts III And V**

  Notwithstanding the liberal interpretation historically applied when assessing the sufficiency of a civil rights complaint, Defendants' objection relies heavily on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) (*See* Doc. 66 3-4). Additionally, despite Defendants' heavy reliance on *Iqbal*, they fail to mention or cite to the multiple, subsequent Ninth Circuit opinions that contain controlling interpretations of *Iqbal* and detail the correct standard this Court should apply to determine the sufficiency of Plaintiff's SAC. *See Starr v. Baca*, 652 F.3d 1202, 1215-16 (9th Cir. 2011); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-7 (9th Cir. 2014). In Starr, 652 F.3d at 1213-16, the Ninth Circuit analyzed not only the Supreme Court's holdings in *Twombly* and *Iqbal*, but also the Supreme Court's related, contemporary holdings in Erickson v. Pardus, 551 U.S. 89 (2007) (*per curiam*), Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), and Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

  The notice pleading requirement of Fed. R. Civ. P. 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence to support the allegations." Starr, 652 F.3d at 1217 quoting Twombly, 550 U.S. at 556. Moreover, as the Ninth Circuit noted post-*Iqbal*, "a district court acts 'prematurely' and 'erroneously'

3

when it dismisses a well-pleaded complaint, thereby 'preclud[ing] any opportunity for the plaintiffs' to establish their case 'by subsequent proof.'" Mohamed v. Jeppesen Dataplan, Inc., 614 F.3d 1070, 1100 (9th Cir. 2010) quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Here, the Defendants seem to be asking for this Court to not only prematurely dismiss a well-pleaded complaint, but to do so before the SAC has even been filed.

1. **Plaintiff asserts supervisory liability through negligent training and supervision and failure to implement appropriate policies, customs, and practices; Plaintiff is not pleading vicarious liability.**

In Count V, Plaintiff seeks to hold the State of Arizona and each of the nine (9) individual supervisors personally liable under common law negligence for hiring, training, supervision, and retention. Defendants assert this claim is futile because there is no vicarious liability under 42 U.S.C. § 1983, and Plaintiff supposedly failed to specifically allege a causal link between each Defendant and the claimed constitutional violation. (Doc. 66 at 4). However, Plaintiff's Count V alleges neither negligent hiring under § 1983 nor specifically alleges vicarious liability.

Other jurisdictions have distinguished vicarious liability and negligent hiring, retention and training as:
> The tort of negligent hiring is distinct from tort liability predicated upon the doctrine of *respondeat superior;* the two theories differ in focus ... under the latter, an employer is vicariously liable for an employee's acts committed within the scope of employment. In contrast, the tort of negligent hiring is a doctrine of primary liability; the employer is principally liable for placing an unfit individual in an employment situation that involves an unreasonable risk of harm to others. Negligent hiring enables a plaintiff to recover in circumstances when *respondeat superior's* 'scope of employment' limitation protects employers from liability.

*Interim Pers. of Cent. Virginia, Inc. v. Messer*, 263 Va. 435, 440, 559 S.E.2d 704, 707 (2002).

4

To state a claim for negligent supervision, the plaintiff must allege that an employee committed a tort,[2] that the defendant employer had a reason and opportunity to act, and that the defendant failed to perform its duty to supervise. *See Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004); *see also Boomer v. Frank*, 993 P.2d 456, 461 (Ariz. Ct. App.1999). "To prevail on a negligent training claim, a plaintiff must show a defendant's training or lack thereof was negligent[.]" *Guerra v. State*, 323 P.3d 765, 772 (Ariz. Ct. App. 2014), vacated on other grounds, 348 P.3d 423 (Ariz. 2015).

Under Arizona law, a public employee is not liable for an injury caused by one prisoner to another prisoner unless the employee "acting within the scope of the public employee's employment intended to cause injury or was grossly negligent." A.R.S. § 12-820.02(A)(4). Further, "[a]ny and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the state." A.R.S. § 31-201.01(F). Both statutes protect state employees for conduct within the scope of their employment or legal duty.

Arizona courts have held, "Conduct falls within the scope [of employment] if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phx., Inc.*, 5 P.3d 249, 254 (Ariz. Ct. App. 2000). Whether an employee is acting within the scope of his employment is a question of fact. *Smith v. Am. Exp. Travel Related Servs. Co., Inc.*, 876 P.2d 1166, 1171 (Ariz. Ct. App. 1994). Thus, Plaintiff only needs to allege facts that, if taken as true, would support a reasonable inference that the employees were not acting within the scope of their employment or legal duty when the allegedly wrongful conduct occurred. *See Iqbal*, 556 U.S. at 678.

---

[2] Plaintiff's Count IV of the SAC alleged negligence and gross negligence against all Defendants. Defendants have not objected to this Count.

5

Here, Plaintiffs' allegations give rise to the inference that Defendants acted outside the scope of their employment during Plaintiff's grievance process and through their failure to provide appropriate medical treatment. Plaintiff alleges that "Thompson told Plaintiff David Garcia that the rioting inmates had broken down the gate despite knowing this to be false." (*Id.* at ¶ 141). Plaintiff alleged that "Thompson presented Plaintiff David Garcia with a waiver (the "Waiver"), and he told Plaintiff David Garcia to state that he did not fear for his life and that he wanted to return to the yard." (*Id.* at ¶ 144.). Further, Defendants assured Plaintiff that he would continue to receive medical treatment as needed, but as Plaintiff plead, that did not happen. (*Id.* at ¶¶ 159, 164, 186) Although Plaintiff alleges Defendants' actions occurred within the time and space limits of employment, Defendants were not employed to perform the type of conduct Plaintiff alleges. Assuming the truth of these allegations, as the Court must, A.R.S. § 31-201.01(F) and § 12-820.02(A) do not bar Plaintiff's claims. *See Motelewski v. Maui Police Dept.*, CV. No. 11-00778BMK, 2012 WL 3780188, at *4 (D. Haw. Aug. 30, 2012) (finding that a police officer was acting outside of the scope of his employment when he committed a sexual assault while on duty because he was "not employed to perform this type of conduct and it was not actuated . . . to serve the employer").

Since Plaintiff has alleged common law negligence and not negligence under § 1983 and since Plaintiff has not specifically alleged vicarious liability under Count V regarding the individually named Defendants, Defendants' argument is moot. As plead, and as discussed herein, the individually named Defendants at times acted within the scope of their employment. In those instances, the State of Arizona is vicariously liable for those actions. However, as plead and as discussed herein, at certain instances, the individually named Defendants were acting outside the scope of their employment, so they are liable for those actions or inactions. While the State of Arizona is vicariously liable under Arizona Statute for actions arising out of tort, this alone does not preclude a claim for negligent hiring, training, or supervision for the individually named Defendants who could be construed as acting outside the scope of their employment. Thus, Count V

6

of Plaintiff's SAC is not futile and this Court should grant Plaintiff's Motion for Leave to Amend Complaint.

### 2. Plaintiff has properly linked each of the additional corrections officers to the September 20, 2013 riot

Defendants have asserted that Plaintiff has failed to link the additional thirty (30) plus corrections officers to the September 20, 2012 riot in Count III of the SAC.[3] To state a claim for threat to safety under the Eighth Amendment, a plaintiff must allege that (1) prison conditions posed a substantial risk of harm; and (2) the defendant was deliberately indifferent to the risk. *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle v. Gamble*, 429 U.S. 97 (1976). A prison official can be held liable "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

In Plaintiff's SAC, starting at paragraph 67 through paragraph 124, Plaintiff specifically alleges the approximate time events occurred, where each named Defendant was located at the start of the riot, what their orders were, and what each Defendant's actions were during the time the riot started through the time Thompson recklessly carried Plaintiff to the medical building. For example, Plaintiff plead:

> At or about 5:08 P.M. Jasso contacted Thompson via telephone, and informed Thompson that inmates were beginning to group in Unit 3. SAC ¶ 74. At or about 5:09 P.M., Thompson ordered Runge, Vogel, and Martinez to meet him at Unit 3. *Id.* at ¶ 76. At or about 5:11 P.M., Thompson and Childree arrived at Unit 3. *Id* at ¶ 84. At 5:11 Pacheco started using a "fogger" on the inmates in an attempt to stop the fighting. *Id.* at ¶ 85. At about the same time Jasso called in the ICS, Patrick was stationed in the Medical Unit, and stated in his incident report that all inmates that were in medical for insulin were secured, despite knowing full well

---

[3] In reality, Plaintiff added a total of twenty (20) additional corrections officers in Count III. Additionally, per Doc 46, this Court has already denied Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 claim regarding Jasso, Pacheco, and Thompson and further stated "it has already found these allegations sufficient to state an Eighth Amendment threat to safety claim. (Doc. 8 at 13.)" Furthermore, Plaintiff believes that Defendant Runge was an additional officer involved with the opening of the gate.

7

that Plaintiff David Garcia had been released into the central recreation field. *Id.* at ¶ 87. Upon information and belief, Martinez never reported to Unit 3, despite Thompson's orders. *Id.* at ¶ 94. At or about 5:11, Segura, who according to post orders was assigned to the Kitchen at D.A. 1, ran to Unit 3 when he saw the inmates fighting. *Id.* at ¶ 95. At or about 5:13 P.M., Plaintiff David Garcia saw who he believes were Jasso, Runge, and Thompson, approach the locked gate separating the central recreation field from the rioting inmates in Unit 3. *Id.* at ¶ 101. Luker, who was stationed in Unit 4 observed the assault on Garcia but did not attempt to stop it until Garcia was unconscious. *Id.* at ¶ 11.

In addition, Plaintiff further plead that on the day of the riot, inmates questioned Kitchen Manager Baker about leaving early. (Doc. 65-1 ¶ 121). The inmates told Baker that they were having a party later. (*Id.* at ¶ 123). Despite this peculiar conversation, Baker never informed any corrections officer, administrator, nor any other ADOC employee about the inmates' comments until the following day. (*Id.* at ¶ 124).

As demonstrated in the SAC, Defendants were objectively unreasonable and undertook actions with willful, reckless, and malicious indifference to the rights of Plaintiff. As alleged, due to the numerous guards moving between units during the riot, Plaintiff affirmatively linked each named Defendant in Count III because their actions or inactions at the time of the riot directly resulted in substantial harm to Plaintiff. *Id.* at ¶ 119. Additionally, each Defendant knew that his or her actions or inactions during the riot would result in inmates facing substantial risk of serious harm and each Defendant disregarded that risk by failing to take reasonable measures to abate it. *Id.* at. ¶ 246.

Thus, Plaintiff's SAC is not futile, and this Court should grant Plaintiff's Motion for leave to Amend Complaint.

### III. REQUEST FOR LEAVE TO AMEND

Plaintiff maintains that his SAC is adequately pled. However, should Plaintiff's motion for leave be denied in part or in whole, Plaintiff respectfully requests leave to amend his SAC in a manner prescribed by the Court. Whereas, while Plaintiff believes his SAC is appropriately drafted, in the event this Court does not believe this, Plaintiff is

certain he can cure any deficiency in his complaint in whatever manner the Court may deem deficient as justice would require that leave to amend be granted. *See* Fed. R. Civ. Pro. 15(a)(2).

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff requests that this Court grants his Motion for Leave to Amend.

**RESPECTFULLY SUBMITTED** this 12th day of December, 2016.

**MILLS + WOODS LAW PLLC**

By */s/   Sean A. Woods*
   Sean A. Woods
   Robert T. Mills
   5055 North 12th Street, Ste 101
   Phoenix, Arizona 85014
   *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2016, I electronically transmitted the attached document to the Clerk of the Court using the ECF System.

This document and the Notice of Electronic Filing were served by mail on the same date on the following, who is a registered participant of the CM/ECF System:

Mark Brnovich
Mark Carl Brachtl
Arizona Attorney General
Office of the Attorney General
1275 West Washington Street
Phoenix, Arizona 85007-2926
*Attorney for Defendants*


/s/ Sean A. Woods