**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| David M. Garcia,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Charles Ryan, et al.,<br><br>　　　　　Defendants. | No.  CV13-01591-PHX-DJH (DMF)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE DIANE J. HUMETEWA, UNITED STATES DISTRICT JUDGE:**

　　　This matter is before the Court on Plaintiff's Motion for Leave to Amend the Complaint (Doc. 65) filed on November 15, 2016.  Defendants responded (Doc. 66), and on December 12, 2016, Plaintiff replied (Doc. 67).  This matter is ripe for decision without oral argument.  This case has been pending since 2013.

　　　As discussed below, it is recommended that the amendment of the proposed Second Amended Complaint be denied in its entirety or allowed only to the extent of naming several additional defendants to Plaintiff's only claim that survived screening, a claim under the Eighth and Fourteenth Amendments and 42 U. S. C. §1983 for threat to safety. This claim is set forth in Count I of the First Amended Complaint and is contained in Count III of the proposed Second Amended Complaint.

Procedurally, Plaintiff did not comply with LRCiv 15.1 regarding motions to amend and there has been sufficient time for discovery such that unidentified non-spouse defendants do not belong in this lawsuit at this time. Further, three years into this lawsuit, Plaintiff should not be allowed to raise pendant claims based on medical care for various conditions, some related and some unrelated to injuries from the prison riot, or grievance claims. Finally, substantively, Plaintiff's counsel attempts to add multiple claims against new and existing parties that have no basis in law or the alleged facts.

## I.   BACKGROUND

In August, 2013, Plaintiff, who was then confined in an Arizona State Prison, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis* (Docs. 1, 2). The Application to Proceed *In Forma Pauperis* was granted (Doc. 6).[1] The Complaint had two counts, Count I was for threat to safety (Doc. 1 at p. 6), and Count II was for denial of constitutionally adequate medical care (Doc 1 at p. 7).

The Court was required to screen the Complaint. *See* 28 U.S.C. § 1915A(a). The Complaint alleged the following facts:

> On September 20, 2012, Johnson and other unknown inmates attacked Plaintiff and beat him into unconsciousness, resulting in severe and traumatic brain injury, as well as other bodily injuries. Johnson was able to attack Plaintiff because Does 1-4 failed to keep the yard fence for Building 3 closed so that rioting inmates could not reach Plaintiff, who was in the Building 4 yard. Johnson is being prosecuted in Pima County Superior Court for the attack on Plaintiff, case #CR20131188, and also received prison disciplinary charges. Plaintiff was hospitalized and had surgery for his injuries, but he does not allege how long he was hospitalized or the reason for surgery. Since that time, Plaintiff has not received follow-up treatment for his severe, traumatic, and permanent brain and head injuries, which include vision and speech problems, headaches, loss of balance, and difficulties in thinking. Plaintiff has repeatedly requested medical follow-up, but "Defendants" have failed to act, allegedly because of costs.

---

[1] Plaintiff was released from prison in early February, 2016 (*see* Doc. 47), and his Application to Proceed *In Forma Pauperis* once released was also granted (Docs. 47, 49).

(Doc. 6 at p. 3-4).

On January 15, 2014, the Court issued a Screening Order dismissing the complaint for failure to state a claim and allowing amendment within thirty days (Doc. 6).

On February 13, 2014, Plaintiff filed a First Amended Complaint (Doc. 8), again alleging two civil rights counts pursuant to 42 U.S.C. § 1983; again, Count I alleged threat to safety (Doc. 8 at 10-16), and Count II alleged denial of constitutionally adequate medical care (Doc. 8 at 17-20).

The Court issued a screening order on October 14, 2014 (Doc. 14). Count I was allowed to proceed against to be later identified defendants who had been a part of unlocking the gate that allowed rioting inmates to reach and assault Plaintiff (Doc. 14 at p. 3). The Court explained:

> To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. Thornton v. City of St. Helens, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). Further, to state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

(Doc. 14 at p. 5-6).

Regarding the second count, Plaintiff alleged the following facts (as summarized by the Court's October 14, 2014, screening Order):

> Following his release from St. Joseph's up to the present, Plaintiff claims that he was not provided any pain medication or pain management treatment, physical therapy, or any follow-up care despite submitted numerous Health Needs Requests (HNRs). However, Plaintiff

3

> acknowledges that at some point, a Corizon employee, Defendant Tucker, evaluated Plaintiff and ordered an MRI. Following the MRI, Tucker explained to Plaintiff that the MRI did not show any bleeding in his brain and that, absent bleeding, he would not receive any more treatment, but could purchase Ibuprofen at the commissary for pain. Plaintiff suffers constantly from headaches, vision and speech problems, a loss of balance, and severe cognitive problems. Despite submitting numerous HNRs concerning his symptoms, he received no responses or care.

(Doc. 14 at p. 5). After reviewing the applicable law regarding denial of constitutionally adequate medical care, the October 14, 2014, Screening Order dismissed the claim finding that Plaintiff had again failed to state a claim:

> Plaintiff alleges that he was evaluated by Tucker, who ordered an MRI, and then discussed the results of the MRI. Plaintiff's disagreement with Tucker's evaluation of the MRI, absent more, does not rise to the level of deliberate indifference. Plaintiff does not otherwise allege when or to whom he submitted his HNRs complaining of his symptoms. Absent additional facts, Plaintiff fails to state a claim for deliberate indifference to his serious medical needs and Tucker and Count II will be dismissed.

(Doc. 14 at p. 8). Plaintiff did not file any motion trying to revive such claim until over twenty five months later and on the last day to move to amend, November 15, 2016 (Doc. 65; *see* Doc. 64).

The three defendants on the threat to safety claim were identified and served by the end of October, 2015 (Docs. 29, 30, 36, 37, 38). In the Court's Order on February 26, 2016 (Doc. 6) denying defendants' motion to dismiss based on qualified immunity, the Court summed up Plaintiff's claim in this lawsuit: "Plaintiff alleges that Defendants went against established policies and intentionally opened a secured gate during a riot, thereby disregarding a substantial risk of harm to him" (Doc. 46 at p. 5).

The three defendants answered on March 14, 2016 (Doc. 48), discovery opened, and a Scheduling Order was issued on March 16, 2016 (Doc. 49). Plaintiff's counsel entered an appearance on June 8, 2016 (Doc. 52). The Scheduling Order was amended on request

of Plaintiff's counsel and without objection several times (for the motions, stipulations, and orders, *see* Docs. 53, 54, 55, 56, 61, 62, 64).  The last day to file a motion to amend or add parties was November 15, 2016 (Doc. 64).  On that day, Plaintiff filed a motion for leave to amend to add approximately thirty additional identified defendants, eighty John and Jane Doe defendants, and five more claims for relief based mostly on events after the events already at issue in the one claim in this lawsuit.

## II.     THE MOTION FOR LEAVE TO AMEND FAILS TO COMPLY WITH APPLICABLE RULES

Rule 15.1(a) of the Local Rules of Civil Procedure ("LRCiv"), governs the amendment of pleadings by motion.  Plaintiff's motion papers fail to comply with LRCiv 15.1 (a), which provides:

> A party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion which must indicate in what respect if differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added. The proposed amended pleading is not to incorporate by reference any part of the preceding pleading, including exhibits.

Although Plaintiff has attached a proposed Second Amended Complaint to the motion, the proposed pleading does not comply with the requirements of LRCiv 15.1. The proposed amended pleading fails to "indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." LRCiv. 15.1(a).  Nothing in the proposed amended pleading is bracketed, struck through, or underlined.

Plaintiff's counsel makes an absurd claim that compliance with the rule is impossible because the Complaint and First Amended Complaint were handwritten (Doc. 65 at p.1, fn 1).   It would have been a simple matter for Plaintiff's counsel to type the First Amended Complaint, which is quite succinct, and then proceed with the bracketing, striking through, and underlining as appropriate.

A district court's local rules are not petty requirements, but have "the force of law." *Hollingsworth v. Perry*, 558 U.S. 183, 191, 130 S.Ct. 705, 175 L.Ed.2d 657 (2010) (citation omitted). They "are binding upon the parties and upon the court, and a departure from local rules that affects substantial rights requires reversal." *Professional Programs Group v. Department of Commerce*, 29 F.3d 1349, 1353 (9th Cir.1994) (internal quotation marks omitted). The District Court of Arizona routinely denies amendment motions for failure to comply with LRCiv 15(a). *See, e.g., Bivins v. Ryan*, 2013 WL 321847, *4 (D.Ariz. Jan.28, 2013); *J–Hanna v. Tucson Dodge Inc.*, 2012 WL 1957832, *1 (D.Ariz. May 31, 2012); *Huminski v. Heretia*, 2011 WL 2910536, at *1 (D.Ariz. July 18, 2011). "Anyone appearing before the court is bound by these Local Rules[,] including "[p]arties not represented by an attorney unless the context requires otherwise." LRCiv 83.3(c)(1).

Failure to follow LRCiv 15.1 made challenging the review of the proposed Second Amended Complaint in light of the Court's prior Orders. To the extent that the Court does not allow any proposed amendment for any other reason stated in this Order, failure to comply with the applicable local rule is an alternative and additional basis to deny amendment. To the extent that the addition of any proposed party or claim in the Second Amended Complaint is not specifically addressed in this Order, the amendment to add such new party and/or claim is denied for failure to comply with the local rule.

### III. THE PROPOSED SECOND AMENDED COMPLAINT WARRANTS CAREFUL REVIEW BEFORE ALLOWING ANY AMENDMENT

Even though Plaintiff is no longer incarcerated and earlier this year secured counsel, screening is arguably required because Plaintiff was a prisoner at the time he filed this action. *See Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) ("[I]ndividuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of … 28 U.S.C. § 1915."); *see also Abdul-Akbar, v. McKelvie*, 239 F.3d 307, 3014 (3d Cir. 2001) ("[T]he need for the district court to screen a complaint in a civil

action filed by a prisoner, as required by 28 U.S.C. § 1915A, looks to the plaintiff's status when the case was filed.").

Even considering the motion to amend standard alone, there are several claims that appear to be legally frivolous and thus Plaintiff should not be allowed to amend to allege such. Importantly, this case was filed in 2013, the parties have been engaged in active motion practice since 2015, and have had most of 2016 for discovery. In deciding the motion to amend, the Court must keep in mind managing this over three year old case so that the parties are afforded a prompt resolution.

## IV. THE 11TH AMENDMENT BARS THE CLAIMS AGAINST THE STATE OF ARIZONA IN THIS FEDERAL COURT

In the proposed Second Amended Complaint, Plaintiff alleges federal constitutional and state law claims against the State of Arizona. Under the Eleventh Amendment to the Constitution of the United States, neither a state nor a state agency may be sued in federal court without its consent. *Pennhurst St. Sch. & Hosp.* 465 U.S. 89, 100 (1984); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

A state may waive its Eleventh Amendment immunity by removing an action to federal court. *See e.g. Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1071 (9th Cir. 2007); *Embury v. King*, 361 F.3d 562, 564-65 (9th Cir. 2004); *Peterson v. State of California Dep't of Corr. & Rehabilitation*, 451 F. Supp.2d 1092, 1099 (E.D. Ca. 2006); *Morgan v. Arizona*, No. 06-0346-TUCFRZ, 2007 WL 2808477, at *8 (D. Ariz. Sept. 27, 2007). This is not a removal action.

Further, Plaintiff's § 1983 claims against the State are improper because the State of Arizona is not a "person" within the meaning of § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that the term "person" as used in § 1983 did not include a State or State agency). Neither is the Arizona Department of Corrections a person within the meaning of § 1983. *Id*. In addition, there is no respondeat superior liability under § 1983. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). Not only was it inappropriate to attempt to name the State of Arizona as a defendant in

7

this action, the law upon which such is based, respondeat superior liability as set forth in proposed Second Amended Complaint paragraph 19, is not correct regarding a §1983 claim (Doc. 65-1 at 7).

The Court lacks jurisdiction over the State of Arizona. Thus, Plaintiff is not permitted to amend his complaint in any way to make the State of Arizona or the Arizona Department of Corrections a party to this case. All references to, allegations regarding, and claims against the State of Arizona are not permitted for inclusion in a second amended complaint.

**V.   ARIZONA LAW BARS STATE CLAIMS AGAINST INDIVIDUAL DEFENDANTS WHO ARE THE DIRECTOR, PRISON OFFICERS, OR EMPLOYEES OF THE ARIZONA DEPARTMENT OF CORRECTIONS**

Under A.R.S. § 31–201.01(F) regarding the Arizona prison system, "[a]ny and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the state." As discussed above, this Court lacks jurisdiction over the State of Arizona, and, thus, the Court will not allow amendment to allow any state tort claims.[2]

**VI.   THE PROPOSED CLAIMS REGARDING MEDICAL CARE AND REGARDING THE GRIEVANCE PROCESS ARE NOT PROPERLY JOINED UNDER FED.R.CIV.P. 20(a)**

Plaintiff's claim regarding inadequate medical care for his prison riot injuries was dismissed by District Judge Humetewa in January, 2014 and again in October, 2014. Plaintiff waited over two years and until the last day to file a motion to amend, November 15, 2016, to attempt to add new claims alleging inadequate medical care and attempt to

---

[2] Plaintiff argues only that the defendants "acted outside the scope of their employment during Plaintiff's grievance process and through the failure to provide appropriate medical treatment" (Doc. 67 at p. 6). Plaintiff makes no allegation or argument that any defendants were acting outside of the scope of their duties in opening the gate during the prison riot. Because, as explained in other sections of this Report and Recommendation, the Court is not allowing in this lawsuit any claim based upon a grievance or medical care, whether individuals were acting within or outside the scope of their duties regarding medical care and the grievance process is irrelevant.

join an entirely different group of defendants from the three prison riot gate defendants.[3] Counts I and VI are entirely based on medical care issues, and Counts II, IV, and V may be partially based on such.

The proposed Second Amended Complaint has a serious joinder problem. A review of the proposed Second Amended Complaint's claims based on inadequate medical care reveals that the bases of the claims are far broader in topic and timeframe than even dismissed Count II of the Complaint and the First Amended Complaint in 2014. In the proposed Second Amended Complaint, Plaintiff seeks to bring claims regarding his medical care not only in 2012 and 2013 before the filing of the lawsuit, but seeks to raise claims relating to his medical care into 2016. Plaintiff seeks to raise claims regarding the in prison care for his diabetes (a condition that pre-existed the prison riot) as well as the quality and nature of transitional care for plaintiff's blood pressure and other health problems when he was released from custody in 2016.

Even inadequate medical care claims relating to the 2012 prison riot injuries arise out of a different sets of facts than how and why Plaintiff was injured in the prison riot. Had Count II of the Complaint or First Amended Complaint stated a claim and been allowed to proceed, it is uncertain whether such claims would have been allowed to be joined with the prison riot injuries claim that the parties have been litigating since 2015. *See* Federal Rule of Civil Procedure 20(a). The claims about who and what caused the riot injuries center on what happened before and during the riot. The claims about what medical care was and/or should have been provided focuses entirely on what happened after the injuries were sustained as well as focuses on a different group of defendants and

---

[3] Plaintiff's counsel asserts the delay was because Plaintiff had trouble litigating pro se and that Plaintiff's counsel (who entered a formal notice of appearance in early June, 2016 (Doc. 52)) had to review voluminous medical records (Doc. 65 at p. 3). While Plaintiff's counsel claims that Plaintiff's traumatic brain injury is partially to blame for the delay, when Plaintiff was without counsel he was able to write articulate and clear legal filings, timely follow this Court's Orders for amending his Complaint, and use subpoenas to identify John Doe defendants.

witnesses. The former focuses on security personnel, and the latter focuses on medical personnel.

Federal Rule of Civil Procedure 20(a), provides that all persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." "Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case-by-case approach. As stated by one district court judge: 'there can be no hard and fast rule, and that the approach must be a general one of whether there are enough ultimate factual concurrences that it would be fair to the parties to require them to defend jointly [the several claims] against them.'" 7 Wright, Miller & Kane, Federal Practice and Procedure § 1653 (3d ed. 2001) (citation omitted).

The proposed Second Amended Complaint goes far afield from the narrow issue and parties already in this case for several years. Further, Plaintiff seeks to join medical care claims completely unrelated to medical care for the prison riot injuries, such as Plaintiff's diabetes care and provision of transitional high blood pressure medication when Plaintiff was released from prison. These claims involve completely different sets of transactions and occurrences and do not share any questions of law and fact. Likewise, any of Plaintiff's claims based on the grievance process turn on events that occurred after the prison riot injuries and do not share common issues of fact and law.

By attempting to add the medical care claims and the grievance process claims, Plaintiff is trying to add an entirely new and different lawsuit to an existing three plus year old lawsuit. The time this case has been pending and has been in active litigation is an important factor for the Court to weigh in assessing whether joinder is proper.

The Court finds that amending the complaint to allow any medical claims and defendants is not appropriate in this lawsuit about the riot at the prison complex that has

been ongoing for several years. The addition of the medical and grievance claims and defendants is not proper under Fed.R.Civ.P. 20(a) for this case at this stage. If the Court were to allow the joinder of such claims and parties, not only would the case become unnecessarily unwieldy to manage, but all the parties will be negatively impacted by the time, delay, and expense of litigating the unrelated matters together.[4]

Plaintiff's motion to amend is therefore denied insofar as adding Second Amended Complaint Counts I & VI (and the defendants named therein) and all of the related allegations. Plaintiff's motion to amend is denied insofar as adding Second Amended Complaint Counts II, IV, and V (and the defendants named therein) as well as all of the related allegations insofar as Counts II, IV, and V pertain to any medical care, treatment, supply, or lack thereof including policies, procedures, and customs.

Further, for the same reasons as set forth above, Plaintiff's motion to amend is denied insofar as adding Second Amended Complaint Counts II, IV, and V (and the defendants named therein) as well as related allegations insofar as Counts II, IV, and V pertain to grievances including policies, procedures, and customs except insofar as such are alleged for satisfying exhaustion requirements of the remaining threat to safety §1983 claim.

**VII. THE REMAINING PROPOSED NEW PRISON RIOT DEFENDANTS AND THE THREAT TO SAFETY §1983 CLAIM**

Applying all of the above, the only claim remaining in Plaintiff's proposed Second Amended Complaint is its Count III, which is the same as First Amended Complaint Count I but for additional defendants sought to be added. Defendants Jasso, Pacheco, and Thompson are already defendants in this matter. The §1983 claim against these defendants survived screening and survived a motion to dismiss based on qualified immunity (Doc. 46). The same claim that has been proceeding against these defendants

---

[4] It is of no matter whether and what position the existing defendants have taken about the addition of the medical claims. This Court, not the existing defendants, decides whether there is any common question of law or fact and whether the claims arise out of the same transaction or occurrence. Fed.R.Civ.P. 20(a).

shall continue to proceed against these defendants on the allegations previously made and any other allegations directed to these defendants' conduct in the proposed Second Amended Complaint. As summed up by District Judge Humetewa, these defendants "went against established policies and intentionally opened a secured gate during a riot, thereby disregarding a substantial risk of harm to him" (Doc. 46 at p. 5).

Proposed Second Amended Complaint names nineteen additional individual officers and one kitchen employee and their spouses as defendants. Defendant argues that the Court should find that Count III is insufficiently plead insofar as it fails to link "three-dozen" or "thirty" additional correctional officers to this constitutional claim regarding the riot (Doc. 66 at p. 4).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir.2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Id. at 1950 (citing Fed.R.Civ.P. 8(a)(2)).

There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658

(1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Plaintiff is requesting that kitchen staff Baker and all the ADOC corrections officers in paragraph 119 be added as defendants. Paragraph 119 states:

> The following ADOC correction officers were stationed in the Santa Maria Unit during the September 20, 2012 riot; their actions or inactions directly resulted in substantial harm to Plaintiff David Garcia: Barnett, Figueroa, Sterns, Martinez, Swanson, Romero, Puri, Pacheco, Cruz, Vogel, Ochoa, Garcia, Runge, Jasso, Segura, Peralta, Escarcega, Patrick, Thompson, and Childree.

(Doc. 65-1 at p. 19). Several of these officers are not otherwise mentioned in the proposed Second Amended Complaint regarding the riot events. Some others were otherwise mentioned but no act or omission directly regarded Plaintiff's lack of safety during the riot. For all such officers, the Court finds that paragraph 119 is inadequate to state a claim against these officers under §1983 for Plaintiff's riot injuries.

Plaintiff alleges that "after failing to stop the fighting with the 'fogger' and verbal commands, Pacheco and Puri ran and locked themselves in a control room in Unit 3 and observed the riots from the safety of the protected and secured control room" (Doc. 65-1 at p. 15, para. 86). Pacheco is already a named defendant, and the Court finds that Puri, having acted similarly, is properly named as a defendant to this claim in addition to Pacheco.

Plaintiff alleges that he had been to medical for insulin, but was sent to and back to his unit without an officer escort (Doc. 65-1 at p. 15, para. 68-72). Proposed defendant Patrick is alleged to have been in medical and to have known that Plaintiff was released

13

into the central recreation field (Doc. 65-1 at p. 15, para. 87). Yet, it is alleged that Patrick wrote in his report that all inmates in medical for insulin were secured in that unit during the riot (*Id.*) The Court finds that Patrick is properly named as a defendant to this claim.

Plaintiff alleges that Runge and Jasso, the latter already being a named defendant, "were assigned as yard officers to monitor the central recreation field" (Doc. 65-1 at p. 17, para 89). "Accordingly, Plaintiff David Garcia's location and expected location was and should have been well known to them" (Doc. 65-1 at p. 17, para 90). Further, Runge appears to have been part of the group that was near the gate when it was unlocked, allowing rioting inmates to reach Plaintiff (Doc. 65-1 at p. 18, para. 101). The Court finds that Runge is properly named as a defendant to this claim in addition to defendant Jasso.

Proposed new defendant Luker is alleged to have observed the assault on Plaintiff and did nothing to stop it until Plaintiff was unconscious (Doc. 65-1 at p. 19, para 111-114). The Court finds that Luker is properly named as a defendant to this claim.

After the rioters were out of the area and Plaintiff lay unconscious, already named defendant Thompson is alleged to have thrown and fireman carried the unconscious Plaintiff to medical, possibly causing additional injuries to Plaintiff (Doc. 65-1 at p. 19, para 118). The Court finds that existing defendant Thompson is properly named as a defendant to this claim.

Kitchen worker Baker is alleged to have known about a possible riot before the riot occurred but did not report such until after the riot (Doc. 65-1 at p. 20, para 121-124). The Court finds that Baker is properly named as a defendant to this claim.

Giving the Plaintiff every benefit of the doubt and broadly construing the allegations in the proposed Second Amended Complaint,[5] the Court finds that Plaintiff has met the minimum requirements to add to the threat to safety §1983 count the following

---

[5] The Court has done so given that this was Plaintiff's last opportunity under the Scheduling Order, as amended, to attempt to amend the complaint in any way other than Jane and John Doe spouse defendants.

14

defendants: Puri, Pacheco, Runge, Jasso, Patrick, Luker, Thompson, and Baker. Their Jane Doe/John Doe spouses may also be named.

## VIII. JOHN AND JANE DOES ARE NO LONGER APPROPRIATE

Plaintiff has had since mid October, 2014, to identify the identities of any unknown defendants (other than spouses of proper defendants). Plaintiff has had ample time and resources to discover the identities of such persons.

The Screening Order of October 14, 2014 (Doc. 14) provided subpoenas to Plaintiff for this purpose. District Judge Humetewa granted multiple extensions of time for use of the subpoenas and otherwise identify the then unknown defendants (*see* Docs. 17, 19, 23, 28).

Plaintiff's counsel has had adequate time to conduct necessary discovery to discover any other defendants:

> On August 10, 2016, the parties exchanged disclosure statements. The Defendants disclosed a multitude of documents all related to the Riot. These documents (which were provided after the Parties stipulated to a Protective Order (Docs. 57, 58)) included reports, interviews, and a daily post sheet of staff who were scheduled to work that day at the Santa Rita Unit.

(Doc. 66 at p. 2).

Further, the Court granted the parties' multiple extensions of time to add additional parties (*see* Docs. 50, 53, 54, 55, 56, 61, 64). John and Jane Doe defendants, other than spouse defendants, are not appropriate in this case at this late date.

## IX. CONCLUSION

Plaintiff has been out of custody since February, 2016, and Plaintiff's counsel entered an appearance on June 8, 2016. The Court met its statutory duty to screen Plaintiff's Complaint and First Amended Complaint when Plaintiff was incarcerated and proceeding *pro se*; the Court has issued Screening Orders of the Complaint and of the First Amended Complaint. The Court has again screened another amended complaint. It

15

is time now for counsel to proceed diligently so that this case reaches a prompt resolution, whether by motion, trial, or settlement.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Leave to Amend Complaint (Doc. 65) be **granted in part** and **denied in part** as set forth herein.

**IT IS FURTHER RECOMMENDED** that Plaintiff be allowed to file a Second Amended Complaint asserting Count III against the following individual defendants (and spouses as applicable) as well as the factual allegations relating thereto, including exhaustion: Puri, Pacheco, Runge, Jasso, Patrick, Luker, Thompson, and Baker.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Leave to Amend Complaint (Doc. 65) otherwise be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72,

/ / /
/ / /
/ / /

16

Federal Rules of Civil Procedure.

Dated this 19th day of December, 2016.

*Deborah M. Fine*

Honorable Deborah M. Fine
United States Magistrate Judge