Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
Jordan C. Wolff (Arizona Bar #034110)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David M. Garcia,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Charles L. Ryan, et al,<br><br>　　　　　Defendants | Case No.: 2:13-cv-1591-DJH (DMF)<br><br>**PLAINTIFF'S SEPARATE STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Assigned to the Hon. Diane Humetewa<br><br>before Magistrate Deborah M. Fine) |

David M. Garcia ("Plaintiff"), by and through undersigned counsel, hereby submits his separate statement of facts.

### SEPARATE STATEMENT OF FACTS

**Procedural Background**

1.  Plaintiff David Garcia ("Plaintiff"), *pro se*, filed this action on August 5, 2013 while confined in an Arizona State Prison ("Original Complaint"). (Doc. 1.)

2.  In his original two-count Complaint, Plaintiff named multiple Defendants, including the Arizona Department of Corrections (ADOC), Director Charles Ryan, a number of other ADOC officials and Correctional Officers (COs), and Corizon Health Services ("Corizon"). (*Id*. at 3−5.)

1

3.     Plaintiff asserted Eighth Amendment threat-to-safety and medical care claims arising from injuries he suffered when he was assaulted during a prisoner riot at Arizona State Prison Complex ("ASPC") Tucson on September 20, 2012, and from Corizon's subsequent failures to provide him adequate medical treatment for his traumatic head and brain injuries, vision problems, speech problems, severe headaches, loss of balance, and "not being able to clearly think out problems." (*Id*. at 6−7.)

4.     On screening under 28 U.S.C. § 1915A(a), the Court dismissed the Original Complaint for failure to state a claim. (Doc. 6.)

5.     On February 13, 2014, Plaintiff filed a First Amended Complaint ("FAC"), in which he alleged additional facts and added several Defendants, including Ryan, Pratt, Lewis, Hammer, Thomas, Lundberg, Childree, Kokemor, Tucker, and three (3) fictitiously named COII's ("Doe Defendants"). (Doc. 8.)

6.     Plaintiff also attached an Inmate Informal [Medical] Complaint Resolution dated August 4, 2013, to the FAC. (Doc. 8 at Ex. 10.)

7.     On screening under 28 U.S.C. § 1915A(a), the Court found that Plaintiff stated his Eighth Amendment threat to safety claim claims against the Doe Defendants and ordered "discover by subpoena, or otherwise, the identities of Defendants Doe 1, Doe 2, and Doe 3 and to file a 'notice of substitution'" within 60 days. (Doc. 14.)

8.     The Court dismissed the remaining claims and Defendants for failure to state a claim without prejudice. (*Id*.)

9.     The Court did not require Plaintiff to amend his complaint by a certain date. (*Id.*)

10.    On April 30, 2015, Plaintiff filed a Response, Notice of Substitution, in which he describes the efforts he has made to identity the COs involved in the September 20, 2012 riot. (Doc. 26.)

11.    Plaintiff stated that he was unable to learn the actual name of any of the Doe Defendants, but attempted to learn their names by way of the ADOC grievance process, by sending subpoenas to the USMS to be served on ADOC Director Ryan, and

2

that he attempted to subpoena incident reports prepared by correctional officers assigned to ASPC-Tucson, Santa Rita unit, during the swing shift on September 20, 2012 riot. (Doc. 26, Exs. 2, 3.)

12. Plaintiff did not receive the information requested from Defendant Ryan. (*Id.* at 4.)

13. After a review of the case file, the Court indicated that the subpoenas submitted by Plaintiff were never forwarded to the USMS. (Doc. 28 at 3.)

14. The Court ordered subpoenas to be served by U.S. Marshalls upon ADOC Director Charles Ryan as "a person who could be served with discovery that could lead to discovery of the actual identities of the Doe Defendants." *Id*.

15. Director Ryan was served with the two subpoenas on June 18, 2015. (Docs. 29, 30.)

16. Plaintiff received a letter from the Arizona Attorney General's Office dated July 2, 2015, in response to the subpoenas served on Charles Ryan. *See* July 2, 2015 Letter attached hereto as Ex. 1.

17. The letter from the Arizona Attorney General's Office on July 2, 2015, purports to provide Plaintiff with the following:

    (1) Correctional services log dated September 20, 2012;

    (2) Shift roster, swing shift, Santa Rita unit, September 20, 2012;

    (3) Information reports dated or involving September 20, 2012, incident; and

    (4) David Garcia inmate Grievances and responses involving September 20, 2012, incident.

*Id*.

18. On July 30, 2015, Plaintiff substituted names for three (3) John Doe defendants with the names Minerette Jasso, Martin Pacheco, and Ian Thompson. (Doc. 31.)

19. On October 30, 2015, Defendants Jasso, Pacheco, and Thompson filed a Motion to Dismiss for Failure to State a Claim. (Doc. 39.)

20. The Court denied Defendants Motion to Dismiss on February 26, 2016. (Doc. 46.)

21. The Court stated that "[it] has already found these allegations sufficient to state an Eighth Amendment threat to safety claim." *Id.*

22. The Court also held that "[it] is unable to conclude at this early stage that Defendants merely made reasonable mistakes in judgment and did not act with a 'culpable state of mind.'" *Id.* at 5:25-27 (citation omitted).

23. On November 15, 2016, Garcia filed a Motion for Leave to Amend Complaint. (Doc. 65.)

24. On February 3, 2017, this Court granted Garcia's Motion for Leave to Amend. (Doc. 73.)

25. Subsequently, Plaintiff filed his Second Amended Complaint ("SAC") on February 15, 2017. (Doc. 77.)

26. Plaintiff's SAC added eighteen (18) new defendants, including but not limited to Moody, Thompson, Runge, Pacheco, Jasso, Puri, Patrick, Luker, and McCutcheon, and four (4) new counts. *Id*.

27. Plaintiff filed his Third Amended Complaint (the "TAC") on June 23, 2017. (Doc. 98).

28. Plaintiff does not make any allegation in the TAC that the September 20, 2012, that left him with life threatening injuries was "sudden". (*See Id.*)

**Facts Surrounding September 20, 2012 Incident**

29. On September 20, 2012, Plaintiff was housed in Building 4 of the Santa Rita Unit at ASPC–Tucson ("Tucson Prison"). Interview of David Garcia attached hereto as Ex. 1 at 2.

30. Plaintiff is a Type II diabetic. *Id.*

31. On September 20, 2012, at around 5:00pm, Plaintiff went to medical unit to receive his insulin shot for his diabetes. *Id*.

4

32. Defendant Puri was assigned to Yard 3 on September 20, 2012, along with Defendants Pacheco and Jasso. Puri Use of Force Report attached hereto as Ex. 2.

33. Defendant Jasso stated that Puri said over the radio "something didn't seem right in A run." Jasso Information Report attached hereto as Ex. 3 at 1.

34. For some period of time, a group of African American inmates grouped outside the control room where Puri was stationed. *Id*.

35. Puri was giving other officers direction over the radio from the safety of the control room. Ex. 2.

36. The prisoners in Yard 3 began fight amongst each other. Ex. 3 at 3.

37. Defendant Jasso initiated ICS. *Id*.

38. Defendant Runge saw Jasso make it to the gate, but at no time did Runge tell Jasso not to open the gate. Runge Use of Force Report attached hereto as Ex. 4.

39. Defendant Runge instructed Defendant Pacheco to "get of out of there" as Defendant Jasso was at the gate. Ex. 4 at 1.

40. Defendant Jasso unlocked the gate that had been confining the rioting inmates to Unit 3. Ex. 2; *See also* Informal Complaint Response from Kokemor dated February 10, 2013 attached hereto as Ex. 5; Interview of inmate Hayes attached hereto as Ex. 6; Criminal Investigations Unit Report attached hereto as Ex. 7.

41. By unlocking the gate, the rioters were able to swarm the recreation yard between the four buildings of the Santa Rita unit.

42. While walking from medical back to his building, Plaintiff witnessed numerous inmates fighting around the gates of Yard 3. *Id*.

43. Plaintiff witnessed a riot between the blacks, whites, and Hispanics in Yard 3. *Id*. at 3.

44. At the time the riot began, COII Petrick reported that all inmates for medical insulin were secured. Petrick Use of Force Report attached hereto as Ex. 8.

45. At the time Petrick reported all inmates for medical insulin were secured, Plaintiff was neither secured in the medical unit or in Yard 4. *Id*.

5

46. While Plaintiff was walking back to Yard 4 from the medical unit, another inmate witnessed a large group of inmates from Yard 3 chase after Plaintiff. Ex. 6 at 5.

47. Plaintiff attempted to enter Yard 4 to escape the group of inmates that were chasing after him, but Yard 4 was locked. Ex. 1 at 3.

48. Plaintiff attempted to climb the gates to escape from the group of inmates that were rioting and chasing after him. Ex. 6 at 5.

49. Defendant Luker was able to see the riot from his station at the kitchen in Yard 4. Luker Interview attached hereto as Ex. 9 at 2.

50. Luker reported that he saw black inmates leave Yard 3. *Id*.

51. Luker reported to seeing another inmate kicking Plaintiff in the face. *Id*.

52. Luker left Yard 4 and ran towards Plaintiff with his gas, causing the inmate to run away from Plaintiff. Luker Use of Force Report attached hereto as Ex. 10.

53. As a result of the assault, Plaintiff was taken to the local hospital with life threatening injuries. University Medical Center ("UMC") Tucson Emergency Department Report attached hereto at Ex. 11.

54. Plaintiff suffered a skull fracture, subdural and epidural hematomas, a subarachnoid hemorrhage, and pneumothorax. Plaintiff had two brain surgeries due to the injuries he sustained on September 20, 2012. *Id*.

55. Upon his release from UMC Tucson and Select Specialty Hospital, Plaintiff needed continued rehabilitation including but not limited to physical and occupational therapy. Select Specialty Hospital Patient Transfer Documents attached hereto as Ex. 12 at 1.

56. Due to the events of September 20, 2012, including but not limited to the injuries Plaintiff suffered and his complete lack of knowledge as to what happened and who was involved, Plaintiff submitted an Inmate Informal Complaint on January 13, 2013, beginning the administrative grievance process. Ex. 13 at 8.

57. On February 10, 2013, Defendant COIII Kokemor responded to Plaintiff's Complaint and stated "there was no way of physically protecting inmate Garcia from the

6

assault" and "…in opening the gate and allowing the African American inmates to exit the yard, the officer more than likely saved many more inmate lives." *Id*. at 7.

58. In reply, also on February 10, 2013, Plaintiff submitted an Inmate Grievance that explained some of his injuries, his recollection of the events of September 20, 2012, and specifically stated "…I was on the big yard where there were no other inmates until the officers let them out." *Id*. at 6.

59. On February 14, 2013, received a response[1] to his Inmate Grievance that stated Plaintiff had received treatment for his injuries and "…you will continue to receive treatment as needed." *Id*. at 5.

60. Plaintiff appealed to the Grievance Coordinator on March 11, 2013, that again explained his recollection of the events and the injuries he sustained. *Id*. at 4.

61. Defendant Kokemor responded with a Decision of Appeal on March 29, 2013, providing no resolution, information, or compensation to Plaintiff. *Id*. at 3.

62. The Decision of Appeal stated, once again, to Plaintiff that "You received medical attention for your injuries and you will continue to receive treatment as needed." *Id*.

63. Plaintiff appealed the decision of the Warden and Deputy Warden on April 11, 2013, stating "I was told by a female officer that the reason the other officer open [sic] the gate was to let her out of the yard." *Id*. at 2.

64. Plaintiff completed the administrative grievance process on May 28, 2013, upon receiving an Inmate Grievance Appeal Response from Charles Ryan. *Id*. at 1.

65. The Response stated Plaintiff's injuries were "unfortunate" and that Plaintiff was "provided immediate medical attention following the incident and will continue to as necessary." *Id*.

---

[1] The signature accompanying the response is illegible, but it appears Grievance Coordinator Lundberg's name is signed.

66. On May 7, 2013, Plaintiff was transferred to Lewis Prison in Buckeye, Arizona. Plaintiff's Health Needs Requests dated May 6, 2013, and May 7, 2013, attached hereto as Ex. 14.

67. During the time Plaintiff imprisoned at Lewis Prison, Plaintiff made numerous medical requests regarding his traumatic brain injury ("TBI"), including doctored ordered therapies, diabetes treatment, and for failing eyesight. *See* Plaintiff's medical grievances attached hereto as Ex. 15.

68. On January 23, 2014, Plaintiff submitted his second Inmate Informal Complaint Resolution. *Id*. at 1.

69. Defendant McCutcheon responded on January 29, 2014, proposed follow-up care in the form of pain management and physical therapy. *Id*. at 2.

70. Plaintiff filed a formal Inmate Grievance on January 31, 2014, demanding five proposed resolutions:

(1) Follow-up care to help rehabilitate physical and cognitive abilities

(2) Investigation into why Plaintiff had not yet received any follow-up care after two brain surgeries, including not receiving pain medication, and an answer for why bleeding on the brain is a prerequisite to receiving medical treatment[2]

(3) Prescription medication or pain management treatments

(4) Rehabilitative therapy

(5) Investigation into Corizon employees who have failed to provide care.

*Id*. at 3 (paraphrased).

71. Plaintiff appealed on February 8, 2014, acknowledging that he had since been seen by the HCP and received physical therapy. Plaintiff demanded answers as to why he had not received any sort of treatment for over a year. *Id*. at 4.

---

[2] Defendant McCutcheon's Response dated January 29, 2014, indicated the most recent MRI performed on Plaintiff showed no bleeding on the brain, so therefore Plaintiff "did not need any further treatment for [his] injury." Ex. 15 at 2.

8

72. Defendant Corizon responded on February 28, 2014, stating Plaintiff's physical therapy is pending approval. *Id*. at 5.

73. Plaintiff resubmitted the same appeal from February 8, 2014, on March 8, 2014. *Id*. at 6.

74. Defendants Ryan responded to the Medical Grievance Appeal to the Director on April 28, 2014, that explained Plaintiff had allegedly been approved and scheduled for a physical therapy appointment, that his prescription medication orders had all expired and were no longer medically necessary, and that if Plaintiff has any additional medical concerns he could submit a HNR. *Id*. at 8.

75. Between the time Plaintiff returned to Tucson Prison in late 2012, and Plaintiff's release from Lewis Prison in February 2016, he did not receive any follow-up care besides an MRI and two physical therapy sessions, the first of which was more than a year and half after the brutal assault on September 20, 2012. Ex. 15.

76. Further, it took more than 20 months for Plaintiff to receive a pair of corrective glasses after he informed the ADOC of his vision issues. *See* HNR regarding vision problems attached hereto at Ex. 16; *see also* Patient Plan attached hereto as Ex. 17; *see also* Eye Glasses Agreement attached hereto as Ex. 18.

77. On August 27, 2018, Defendant Ryan served his responses to Plaintiff's First Amended Requests for Production, and largely objected or otherwise refused to participate or respond to requests for emails and other ESI. Defendant Ryan's Response to Plaintiff's First Amended Requests for Production attached hereto as Ex. 19.

78. Defendant Baker knew or should have known that the disturbance was likely to occur after receiving information about inmates having "a party" later in the day on September 20, 2012. Baker Information Report attached hereto as Ex. 20.

79. Defendant Thompson recounted the pace at which the disturbance escalated and spread between yards 3 and 4. Thompson Use of Force Report attached hereto as Ex. 21.

9

80. Other ADOC staff was unbothered by the disturbance and inmates of different races continued working and even asked "What's going on?" Memorandum Report attached hereto as Ex. 22.

**RESPECTFULLY SUBMITTED** this 4th day of September 2018.

**MILLS + WOODS LAW, PLLC**

By    /s/ Sean A. Woods
      Robert T. Mills
      Sean A. Woods
      Jordan C. Wolff
      5055 N 12th Street, Suite 101
      Phoenix, AZ 85014
      *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this this 4th day of September 2018, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Mark Brnovich
Michelle Lombino
2005 N. Central Ave.
Phoenix, Arizona 85004
michelle.lombino@azag.gov
*Attorneys for Jasso, Pacheco, Thompson, Ryan, Thomas, Moody, Runge, Puri, Luker, Kokemor, and McCutcheon*

Anthony J. Fernandez
Dustin A. Christner
Alyssa R. Illsley
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
afernandez@qpwblaw.com
Dustin.Christner@qpwblaw.com
Alyssa.Illsley@qpwblaw.com
*Attorneys for Defendant Corizon Health, Inc.*

Kevin C. Nicholas
Michael B. Smith
LEWIS BRISBOIS BISGAARD & SMITH LLP
Phoenix Plaza Tower II
2929 North Central Ave. Suite 1700
Phoenix, Arizona 85012-2761
Kevin.Nicholas@lewisbrisbois.com
*Attorneys for Defendant Thomas Rawa, M.D.*

Randy J. Aoyama
Bradley L. Dunn
HINSHAW & CULBERTSON LLP
2375 E. Camelback Rd., Suite 750
Phoenix, Arizona 85016
raoyama@hinshawlaw.com
bdunn@hinshawlaw.com

　　　/s/ *Jordan C. Wolff*