1  MARK BRNOVICH
   Attorney General
2
3  Michelle C. Lombino
   Assistant Attorney General
   State Bar No. 016252
4  2005 North Central Avenue
   Phoenix, Arizona 85004-1592
5  Telephone: (602) 542-8170
   Fax:  (602) 542-7670
6  E-mail: michelle.lombino@azag.gov

7  *Attorneys for Defendants Jasso, Pacheco, Thompson,*
   *Ryan, Moody, McCutcheon, Kokemor, Thomas, Puri,*
8  *Luker and Runge*

9
10          **IN THE UNITED STATES DISTRICT COURT**

11          **FOR THE DISTRICT OF ARIZONA**

12  David M. Garcia,

13            Plaintiff,                No.  CV 13-01591-PHX-DJH (DMF)

14  v.                                  **DEFENDANTS RYAN, MOODY,
                                        MCCUTCHEON, KOKEMOR,
15  Charles Ryan, et al.,                THOMAS, PURI, PATRICK, LUKER
                                        AND RUNGE'S REPLY IN SUPPORT
16            Defendants.               OF MOTION FOR SUMMARY
                                        JUDGMENT**
17

18          Defendants Charles Ryan, Christopher Moody, Sarah McCutcheon, Joseph Kokemor,

19  "C. Thomas," Ashis Puri, Mitchell Patrick, Randy Luker and Robert Runge ("Defendants")

20  submit their reply in support of their motion for summary judgment.  (Doc. 179.)

21          **M**EMORANDUM OF **P**OINTS AND **A**UTHORITIES

22  **I.      Preliminary Statement.**

23          Plaintiff argues that Defendants cannot cite his third amended complaint as evidence

24  (*id.* at 1, 19) and that by citing it, Defendants have failed to meet their evidentiary burden

25  (*id.*)  He is wrong.   The allegations in his third amended complaint are judicial admissions.

26  *See In re Barker*, 839 F.3d 1189, 1195 (9th Cir. 2016) (citing *American Title Ins. Co. v.*

7305755

*Lacelaw Corp*., 861 F.2d 224, 226 (1988)  ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  They are "conclusively binding on the party who made them.")  It is true, however, that he cannot rely on his unverified complaint to defeat Defendants' motion for summary judgment.  *See Moran v. Selig*, 447 F.3d 748, 759 (9th Cir. 2006) (complaint cannot be considered as evidence in favor of plaintiffs at the summary judgment stage because it is unverified).

As the nonmoving party, Plaintiff has the burden to "come forward with specific facts showing that there is a genuine issue for trial."  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal citation omitted); Fed. R. Civ. P. 56(c)(1).  In a seeming effort to evade his burden, Plaintiff "requests that the Court refuse to convert Defendants' motion to dismiss to a motion for summary judgment."  (Doc. 209 at 4.)  But Defendants' motion for summary judgment is just that, and so, there is nothing for the Court to refuse to "convert."  While the Court previously ruled in this case that it would convert Wexford Health Services, Inc.'s motion for judgment on the pleadings (Doc. 135) to a motion for summary judgment under Rule 56 "[p]ursuant to Rule 12(d) of the Federal Rules of Civil Procedure" (Doc. 152 at 3), Rule 56 does not have a similar provision that allows a motion for summary judgment to be converted into a motion to dismiss.  Moreover, by presenting matters outside the pleadings (Doc. 209-1), Plaintiff himself does not comply with Rule 12.  There is no legal support for his request that the motion for summary judgment be treated as a motion to dismiss.  Hence, his citations to and reliance on cases concerning motions to dismiss (Doc. 209 at 5-6) and motions for judgment on the pleadings (*id*. at 6) are misplaced.  His repeated reliance on the purported "motion to dismiss" standard (*id*. at 17-19) likewise is misplaced.

His argument that he has not had sufficient time for discovery (*id*. at 7, 14) has been roundly rejected by the Court: "[a]s this case was brought in 2013, such assertion plainly

fails." (Doc. 199 at 3.) His argument that he has not been able to develop facts essential to justify his opposition because of Defendants' purported failure to produce emails and other electronically stored information (Doc. 209 at 7) likewise has been rejected as lacking merit. (Doc. 193; Doc. 199 at 2, 4.) Moreover, in repeating this argument, he again fails to comply with the requirements of Rule 56(d). That rule requires a party opposing a motion for summary judgment to file an "affidavit or declaration that for specified reasons, it cannot present facts essential to justify its opposition." *See* Fed. R. Civ. P. 56(d). He did not submit the required affidavit or the information required by the rule. His request that the motion should be denied because he purportedly has not been able to conduct adequate discovery (Doc. 209 at 14) is spurious. The Court should reject it.

## II.     Legal Argument.

### A.     Plaintiff's Claims Are Barred by the Statute of Limitations.

#### 1.     Plaintiff's Threat to Safety Claim Accrued on September 20, 2012.

Plaintiff filed suit under § 1983, for which "the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury." *Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026-27 (9th Cir. 2007) (internal quotation marks and citation omitted); *accord Wallace v. Kato*, 549 U.S. 384, 388 (2007). The claim accrues at that time because, as the Ninth Court has noted, that is "when the plaintiff has 'a complete and present cause of action,' that is, 'the plaintiff can file suit and obtain relief.'" *Wallace v. Kato*, 549 U.S. at 388 (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192, 201 (1997). This general rule for § 1983 suits applies to inmates' § 1983 suits. *See, e.g.*, *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 885 (9th Cir. 2017). Here, Plaintiff's threat to safety claim accrued on September 20, 2012—the date that he was injured. (SOF ¶¶ 71-74.)

He nonetheless argues that he did not have a clear and present cause of action until July 2, 2015, when he purportedly determined the names of the defendants whom he had

sued as Does 1, 2, and 3.  (Doc. 209 at 12.)  He is wrong.

The "trigger" for claim accrual under § 1983 is "fixed to the inmate's knowledge of the injurious event."  *Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018).  Here, it is undisputed that Plaintiff was aware of his injuries and their probable cause in September 2012.  In his January 12, 2013 inmate letter (Doc. 180-1 at 29), he wrote:

> Threat to safety. . . Sometime towards the end of September of 2012, during the first week of my imprisonment. . . I found myself in a coma with life threatening injuries as a result of negligence in the behalf of D.O.C. officers.  I vividly recall exiting medical and going towards my housing unit. Inexplicably, during a full blown riot, and "ICS" initiated, I found myself in the center of it all but protected until, I seen CO II Alvarez and CO II Martinez open the gate and a multitude of blacks ran out, caught me by myself, attacked me, stomped me, and almost killed me.

His threat to safety claim therefore accrued on September 20, 2012, and the statute of limitations began to run on that date.  *See U. S. v. Kubrick,* 444 U.S. 111, 118-123 (1979) (cause of action accrued and two-year statute of limitations applicable to actions brought under Federal Tort Claims Act began to run when plaintiff was aware of his injury and its probable cause); *cf. Bibeau v. Pacific Northwest Research Foundation Inc.*, 188 F.3d 1105 (9th Cir. 1999) (former inmate who participated in a series of testicular irradiation experiments three decades earlier did not know that he had been injured as a result of the experiments).  *O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139 (9th Cir. 2002) has no bearing on the present case.  That case involved a delayed discovery rule under the Comprehensive Environmental Response, Compensation, and Liability Act and state tort claims for damages from exposure to hazardous substances.

The two-year statute of limitations on Plaintiff's threat to safety claims against Moody, Puri, Patrick, Luker and Runge began to run on its September 20, 2012 accrual date.  *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004) (statute of limitations for such suits is two years).  It was tolled for the 136 days during which Plaintiff

exhausted his threat to safety grievance under ADC's grievance process.  (SOF ¶ 16).  *See Soto*, 882 F.3d at 871-72 (statute of limitations is tolled while claimant pursues Arizona' prison-grievance process).  The statute of limitations as to his claims against Moody, Puri, Patrick, Luker and Runge thus expired on February 3, 2015.  His claims against them are barred by the statute of limitations.  They are entitled to summary judgment.

> **2.** **The statute of limitations on Plaintiff's claims against McCutcheon expired by no later than January 31, 2016.**

Plaintiff admits that McCutcheon responded to his inmate informal complaint resolution on January 29, 2014.  (Doc. 211 at 8, ¶¶ 68-69.)  Although he argues that McCutcheon failed to act in a prudent manner to protect his health subsequent to that date, he fails to offer any proof to support his allegation.  (Doc. 210 at 12, ¶ 70.)  Plaintiff filed a formal inmate grievance on January 31, 2014, in which he acknowledges that he knew of McCutcheon's response to his informal complaint.  (Doc. 209-1 at 20.)  Because Plaintiff knew of McCutcheon's response to his grievance—which forms the basis of his claim against McCutcheon (Doc. 98 at 20, ¶¶ 145-47, 210-13)—by no later than January 31, 2014, his claim against McCutcheon accrued, at the latest, on that date.  *See Soto,* 882 F.3d at 870.  The statute of limitations on his claim against McCutcheon therefore expired by no later than January 31, 2016.  *See Cholla Ready Mix,* 382 F.3d at 974.  Plaintiff did not file a claim against McCutcheon until February 15, 2017.  (Doc. 180 at 11, ¶ 53, Doc. 210 at 7-8, ¶ 53.)  His claim against McCutcheon is barred by the statute of limitations.  McCutcheon is entitled to summary judgment.

> **3.** **The statute of limitations on Plaintiff's claims against Ryan, Kokemor and Thomas expired before he filed his Second Amended Complaint.**

It is well-established in the Ninth Circuit, that an "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Ramirez v. County of San Bernardino*, 806 F.3d 1002 (9th 2015) (citations and internal quotation marks omitted).  "In other words, the original pleading no longer performs any function." *Id*. (citation and

1    internal quotation marks omitted).  As a result, an amended complaint supersedes a

2    complaint, and the complaint ceases to exist.  *Id.*

3          Applying the Ninth Circuit rule in the present case, Plaintiff's original complaint

4    (Doc. 1) ceased to exist and performed no function when he filed his first amended

5    complaint (Doc. 8), which then superseded his original complaint in its entirety.  In his first

6    amended complaint, he alleged a claim for threat to safety in Count I (Doc. 8 at 10-16) and a

7    claim for denial of constitutionally-adequate medical care in Count II (*id*. at 17-10).

8    Although he named Director Charles Ryan; Richard Pratt, Interim Director of ADC's Health

9    Services Division; Tucson Complex Warden Thomas; Manzanita Unit Deputy Warden

10   Lundberg; Captain Childree; Correctional Officer III Kokemor; Tucson Complex CO IIs

11   John Doe 1, John Doe 2 and a Jane Doe 3 (collectively the "ADC Employees"); Medical

12   Provider Tucker; and Corizon Health Services Managers, Cameron Lewis and Linda

13   Hammer (collectively, the "Corizon Employees") as defendants (*id*. at 1-2), he failed to

14   allege any facts against Ryan, Pratt, Lewis, Hammer or Lundberg (Doc. 14 at 7).  In his

15   Count I, threat to safety claim, he alleged only that Childree, Kokemor, and Thomas

16   responded to grievances or grievance appeals.  (*Id*.)  In his Count II claim for denial of

17   medical care, he makes allegations only against Medical Provider Tucker.  (Doc. 8 at 18.)

18   The Court dismissed all defendants other than the three Doe defendants, and the Count II

19   claim without prejudice.  (Doc. 14 at 11.)

20         Significantly, the ADC Employees were not included in his Count II medical claim.

21   Plaintiff alleged a claim for deliberate indifference to his medical needs against Moody,

22   Ryan, Kokemor and Thomas only upon the filing of his second amended complaint on

23   February 15, 2017.  (Doc. 180 at 11, ¶ 53; Doc. 210 at 7-8, ¶ 53.)

24         He now alleges that Kokemor responded to his grievances on February 10, 2013

25   (Doc. 211 at 6, ¶ 57), and March 29, 2013 (*id*. at 7, ¶ 61); that Ryan responded to his

26   grievances on May 28, 2013 (*id*. at 7, ¶ 64), and April 28, 2014 (*id*. at 9, ¶ 74); and that

6

1   Thomas responded to his grievance on March 29, 2013 (Doc. 98 at 18).  Even using April

2   28, 2014—the latest of these dates—as the date on which his claim for medical indifference

3   accrued, the statute of limitations expired on April 23, 2016.  Hence, his claim for deliberate

4   indifference to his medical needs against Moody, Ryan, Kokemor and Thomas—first raised

5   on February 15, 2017—is barred by the statute of limitations.

6   **B.      Plaintiff's Claims against Defendants Do Not Relate Back under Ariz. R. Civ. P. 15(c)(1)-(2).**

7   Arizona Rule of Civil Procedure 15(c) provides for the relation back of pleadings

8   under the following circumstances:

9   (c) **Relation Back of Amendments.**

10  (1) *Amendment Adding Claim or Defense*.  An amendment relates back to the date of the original pleading if the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading.

11

12

13  (2) *Amendment Changing Party*.  An amendment changing the party against whom a claim is asserted relates back if:

14

15  (A)    Rule 15(c)(1) is satisfied; and

16  (B)    within the applicable limitations period--plus the period provided in Rule 4(i) for the service of the summons and complaint--the party to be brought in by amendment:

17

18  (i)     has received such notice of the institution of the action that it will not be prejudiced in maintaining a defense on the merits; and

19

20  (ii)    knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

21

22  Fed.R.Civ.P.  15(c).   An  amended  complaint  relates  back  to  the  date  of  the  original

23  complaint only if all four of the Rule's requirements are met.  *Flynn v. Campbell*, 243 Ariz.

24  76, 84 (2017).

25       As discussed above, the statute of limitations had expired by the time that Plaintiff

26  filed his second amended complaint against Defendants on February 15, 2017.  And his

7

second amended complaint—in which he named Moody, Puri, Patrick, Luker and Runge as defendants for the first time, and in which he not only amended his medical needs claim but first asserted that claim against Ryan, Moody, McCutcheon, Kokemor, and "C. Thomas"—does not relate back to the dates of his prior pleadings.

"In the context of adding or changing a party, the [relation back] doctrine protects the to-be-added defendant by barring its addition unless the plaintiff proves notice, knowledge and timeliness." *Pargman v. Vickers*, 208 Ariz. 573, 576 (App. 2004) (citation omitted). A plaintiff must show that the party to be brought in (1) received notice of the filing of the action, (2) knew or should have known that the plaintiff would have sued it but for a mistake, and (3) received the required notice and knowledge within the original limitation period plus the time allowed for service of process. *Id*. Plaintiff fails to satisfy these requirements.

### 1. Plaintiff fails to show that Defendants received notice of the filing of this action within the time prescribed by Rule 15(c)(2)(B).

Plaintiff fails to show that Defendants received *actual* notice of the institution of the action within the time prescribed by Rule 15(c)(2)(B). *See Flynn*, 243 Ariz. at 81 (recognizing that Rule 15(c) requires that party to be joined by amendment must "have received actual notice of the amended complaint within the applicable statute of limitations plus the time for service of the summons and original complaint"); *Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, 465 (1990) (holding that informal notice of a claim is insufficient under Rule 15(c)). Although he alleges that Defendants knew or should have known that they were likely to be named from the "moment" that he filed his original complaint (Doc. 209 at 8), and that the Arizona Attorney General's office was aware from the date of his original complaint that officers would be named as defendants (*id*. at 10), he speculates without proof. And the facts show otherwise.

Plaintiff acknowledges that this Court screened both his original (Doc. 209 at 2) and amended complaints (*id*.) under 28 U.S.C. § 1915(A)(a). That statute provides:

> **Screening**.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

28 U.S.C. § 1915(A)(a).  Subsection (b) further provides:

> **Grounds for dismissal**.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

Under 42 U.S.C. § 1997e(g), no relief will be granted to a plaintiff unless a reply has been filed, and a defendant is not obligated to reply unless a court requires it to do so. The practical effect of these statutes is that one cannot assume—as Plaintiff does—that any of the Defendants or the Attorney Generals' office received notice of the filing of his prisoner lawsuit when he filed his complaints with the Court.  And Plaintiff offers no evidence to show that they did.    Even defendants Jasso, Pacheco and Thompson—who Plaintiff identified as the Doe defendants—did not appear in this action until October, 2015.  (SOF ¶ 38.)  Plaintiff fails to satisfy the requirements of Rule 15(c)(2)(B)(i).  Summary judgment should be granted to Defendants.

> **2.     Plaintiff fails to show that Defendants knew or should have known within the time prescribed by Rule 15(c)(2)(B) that the action would have been brought against them but for a mistake concerning the identity of the proper party**.

A court begins its analysis under Rule 15(c)(2)(B)(ii) by assessing a defendant's knowledge regarding a plaintiff's purported mistake regarding the proper party within the applicable limitations period plus the period provided in Rule 4(i) for the service of the summons and complaint.  *Flynn*, 243 Ariz. at 82.  "A prospective defendant's mere '[n]otice of the suit does not necessarily establish that knowledge.'"  *Id*., citing *O'Keefe v. Grenke*, 170 Ariz. 460, 466 (App. 1992).

1    The limitations period for service under Rule 4(i) is "90 days after the complaint is

2    filed." Ariz. R. Civ. P. 4(i).  For relation back to apply, Plaintiff must show that Defendants

3    knew or had reason to know of his mistake as to the proper party within 90 days after the

4    latest point at which his claims accrued.  Plaintiff cannot meet his burden.  As set forth in

5    Defendants' motion, the applicable date for Moody, Puri, Patrick, Luker and Runge is May

6    4, 2015.  (Doc. 179 at 20.)  The applicable dates for Ryan are May 28, 2015 (*id.* at 22) and

7    April 28, 2016; for McCutcheon, April 28, 2016; for Kokemor, May 11, 2015; and for

8    Thomas, June 27, 2015.

9    Instead of showing that each Defendant had knowledge of his purported mistake

10   within the applicable time period, Plaintiff argues that notice and knowledge may be

11   imputed from an original defendant when there is an "identity of interest" between the two.

12   (Doc. 209 at 10.)  His argument is unavailing.  In *Pragman,* unlike the present case, the

13   original defendant's insurance carrier knew within the time specified under Rule 15(c) of

14   plaintiff's lawsuit and that plaintiff had mistakenly sued the deceased insured when she

15   should have sued the deceased's estate.  Here, even defendants Jasso, Pacheco and

16   Thompson did not appear in this action until October, 2015 (SOF ¶ 38)—well after the

17   applicable date for determining each Defendant's knowledge of a purported mistake by

18   Plaintiff concerning the identity of the proper party.  Moreover, even if Plaintiff could show

19   that each Defendant had timely notice of the filing of his lawsuit—which he cannot—as the

20   *Flynn* court notes, that does not necessarily establish Defendants' knowledge of his

21   purported mistake.  *See Flynn*, 243 Ariz. at 82.

22   The burden is on Plaintiff to show that a "cognizable mistake" concerning the

23   identity of the proper party occurred.  *Id.*, at 79-80 (citing *Tyman v. Hintz Concrete, Inc.*,

24   214 Ariz. 73, 76-77 (2006)).  The mistake may be factual or legal but it cannot be "a

25   deliberate choice to sue one party instead of another while fully understanding the factual

26   and legal differences between the two." *Id.* at 83.  The *Flynn* court recognized:

1

2
> [I]f a plaintiff makes a deliberate choice to sue one party instead of another for litigation advantage, however ill-advised and fairly characterized as legal error, it is a strategic decision and is not cognizable under Rule 15(c) as a mistake concerning the identity of a proper party. *See Tyman*, 214 Ariz. at 76–77 ¶¶ 21, 23, 148 P.3d at 1149–50 (holding plaintiff's decision to sue fictitious defendants was not cognizable under Rule 15(c) because it was not a mistake at all; she sued them as placeholder defendants for the strategic purpose of tolling the statute of limitations as she sought to identify the liable parties).

3

4

5

6

7

8   *Id*. at 83.  *See also Boss v. City of Mesa*, 2018 WL 4001717 * 2 (9th Cir. 2018) (citation

9   omitted) ("Replacing a 'John Doe' defendant with the actual name of a defendant is not a

10  'mistake' that allows relation back" under FRCP 15(c)(1)(C)).  Here, Plaintiff's threat to

11  safety grievance concerned the actions of two corrections officers, who, he alleged, opened

12  a gate during a riot, giving rioting inmates access to him.  (Doc. 209-1 at 6-13.)  He likewise

13  alleged in both his original (Doc. 1 at 6) and first amended complaint (Doc. 8 at 12) that

14  three John Doe officers opened a gate during a riot.  Jasso, Pacheco and Thompson were

15  subsequently added for the three Doe officers.  (Doc. 32 at 3.)  The allegations in the body

16  of the original and the first amended complaint did not plainly indicate that Plaintiff

17  intended any party, other than the three Doe defendants, to be named under his threat to

18  safety claim.  *See Butler v. Nat'l Community Renaissance of Calif.*, 766 F.3d 1191, 1198

19  (9th Cir. 2014).  Hence, Plaintiff did not *change a party* under Rule 15(c)(2)(B) when he

20  named Moody, Puri, Patrick, Luker, Runge and McCutcheon in his second amended

21  complaint, and he did not make a mistake in naming the Doe defendants instead of them.

22      Although Plaintiff named Ryan as a defendant in his original and first amended

23  complaint, he failed both times to allege that Ryan personally participated in a violation of

24  his constitutional rights.  (Doc. 6 at 5; Doc. 14 at 7.)  The Court dismissed Ryan as a

25  defendant.  (Doc. 14 at 11.)  Because Plaintiff failed to allege any "conduct" by Ryan or any

26  "transaction or occurrence" concerning him in his prior pleadings, he fails to satisfy the

1    requirements of Rule 15(c)(1).

2          Plaintiff's argument that Plaintiff "named as many Defendants as he could recall or

3    obtain information about" in his various complaints (Doc. 209 at 10) is irrelevant for

4    purposes of Rule 15(c)(2)(B)(ii).   *See Flynn*, 243 Ariz., at 81(citation omitted)

5    ("Information in the plaintiff's possession is relevant only if it bears on the defendant's

6    understanding of whether the plaintiff made a mistake regarding the proper party's

7    identity.")  His argument that the parties "were not relieved of their duties to timely disclose

8    relevant information pursuant to Fed. R. Civ. P. 26" (Doc. 209 at 9) is a red herring.  An

9    "action brought without an attorney by a person in the custody of . . . a state" is exempt from

10   initial disclosures.  Fed. R. Civ. P. 26(a)(1)(B)(iv).

11         His reliance on *Ogle v. Stewart*, 230 Fed. Appx. 646 (9th Cir. 2007) is misplaced.  In

12   *Ogle*, the plaintiff filed a motion to add two correctional officers as defendants

13   approximately twenty-one days after the statute of limitations had expired.  *Id*. at 647.  The

14   court allowed him to amend under the doctrine of equitable tolling where the Arizona

15   Attorney General's office had not responded to his discovery requests until after the statute

16   of limitations had lapsed.  *Id*. at 648-49.   Here, in contrast, Plaintiff filed his second

17   amended complaint (Doc. 77) three and a half *years* after he filed his original complaint

18   (Doc.1), and after the Court gave him multiple extensions of time to conduct discovery to

19   identify the Doe defendants (Doc. 14 at 11, Doc. 17-1, Doc. 18-32).

20         Five years have elapsed since the events underlying Plaintiff's action.  His argument

21   that Defendants will not be prejudiced merely because the State of Arizona will be

22   defending them (Doc. 209 at 10) ignores the prejudice inherent in his long delay.  He would

23   "so delay limitations as to frustrate the purpose of the limitations period."  *See Soto*, 882

24   F.3d 865, 870 (9th Cir. 2018).  "[M]emories would dim, witnesses would be difficult to

25   find, and evidence would grow stale or disappear."  *Id*.  He cites no authority for his

26   argument that Defendants are precluded from arguing that they are prejudiced because the

State purportedly did not contest the addition of the three Doe defendants.  (Doc. 209 at 11.)  Jasso, Pacheco and Thompson—the three Doe defendants—are not the moving parties here.

Plaintiff fails to satisfy the requirements of Rule 15(c)(2)(A) and (B)(ii).  Summary judgment should be granted to Defendants.

### C.   Defendants are Entitled to Summary Judgment Based on Plaintiff's Failure to State Claims against Them.

"When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 380 (2007), citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Scott*, 550 U.S. at 380, citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248 (1986).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  *Scott*, 550 U.S. at 380.   Here, Plaintiff argues that it is "reasonable to infer" a great many things.  (Doc. 209 at 16-18, 24-25.)  But his inferences are mere speculation, and the story he tells is contradicted by the record at every turn.  The record taken as a whole could not lead a rational trier of fact to find for him, and so there is no genuine issue for trial.  Defendants are therefore entitled to summary judgment.

### 1.   Baker was the kitchen manager, not an officer, and is not a moving party.

Plaintiff alleges that "Officer Baker," a purported "guard," knew there was going to be a "party" but failed to report it.  (Doc. 209 at 15.)  Plaintiff's own exhibit shows

that D. Baker was a kitchen manager—not a guard.  (Doc. 211 at 9, ¶ 78, Ex. 20.)  Her job duties included running two kitchens on the Santa Rita yard; ensuring that meals were out on time and that inmates were fed on time; ensuring that the product needed for meals was available; training of staff and inmates assigned to the unit's kitchens and ensuring proper sanitation of the kitchens.  (Doc. 159 at 7-8, ¶ 27.)  She was not an employee of ADC, is represented not by the Attorney Generals' office but by her own private counsel (*id.*), and is not a party to Defendants' motion for summary judgment.

### 2. McCutcheon was not deliberately indifferent to Plaintiff's medical needs.

Plaintiff states that he sent a January 23, 2014 inmate informal complaint resolution to McCutcheon.  (Doc. 211 at 8, ¶ 68.)  In his informal complaint, he described being assaulted and injured during a riot in September 2012, and requested that he "be given follow-up care to help me rehabilitate my physical and cognitive abilities to some semblance of what they were prior to the assault."  (Doc. 209-1 at 18.)  He admits that she responded on January 29, 2014.  (Doc. 211 at 8, ¶ 69.)  Given that DO 802 requires a response to an informal complaint resolution within 15 days (Doc. 180 at 3, ¶ 8), her response was more than timely.  He also admits that she "acknowledged his concerns."  (Doc. 209 at 15.)  She wrote in pertinent part:

> I contacted the office of the Facility Health Administrator regarding your complaint and was advised that you will be scheduled to see the unit Health Care Provider to discuss your concerns.

(Doc. 209-1 at 19.)  There is nothing in McCutcheon's conduct that demonstrates deliberate indifference to Plaintiff's serious medical needs.  By Plaintiff's own admission, she acknowledged his concerns.  And her response that she had contacted the Facility Health Administrator and was advised that he would be scheduled for an appointment was a reasonable and entirely appropriate one.

He now contends that she failed to protect him from being assaulted and failed to treat his serious medical needs.  (Doc. 209 at 25.)  He did not allege a failure to protect claim against McCutcheon.  (Doc. 98 at 28-29.)  And the rest is mere conjecture and speculation.

Plaintiff fails to come forward with specific facts to show there is a genuine issue for trial.  McCutcheon is entitled to summary judgment.  *See Matsushita,* 475 U.S. at 586, (citation and internal quotation marks omitted omitted) ("purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial").

### 3.      Ryan was not deliberately indifferent to Plaintiff's medical needs.

Plaintiff claims that he resubmitted a medical appeal on March 8, 2014.  (Doc. 211 at 9, ¶ 73.)  In it, he admits "I have been seen now by the [Health Care Provider] and physical therapy prescribed" but alleges that he "was not given any type of: follow-up care for a year after having two brain surgeries, no pain medications and no type of rehabilitative therapy."  (Doc. 209-1 at 23.)  He admits that on April 28, 2014, Ryan responded to his medical appeal.  (Doc. 211 at 9, ¶ 73.)  Ryan wrote that Plaintiff's appeal was investigated, including a review of his medical and pharmacy records.  (Doc. 209-1 at 25.)  He denied the appeal for the following reasons:

> 1. Our review shows you underwent craniotomy and facial reconstruction surgeries following an assault.  You were subsequently followed by medical staff including evaluations by specialists.  A CT of the head and brain due to speech difficulties following your left-sided craniotomy was completed on 8/5/13 and results showed <u>no</u> evidence of hemorrhage.  During a provider visit of 2/7/14, a request for physical therapy was submitted to address the findings of slow gait, fine motor deficits and ability to perform heel-to-toe walk secondary to balance issues.  You have been approved and scheduled for the appointment.   Appropriate management will be provided based on the physiotherapist's findings and recommendations.  You are also continuing to be monitored by onsite medical staff.

> 2. Your pharmacy records confirm that you have been placed on various pain medications over time including the following: a) Norco expired 6/1/13; b) Motrin & Tylenol expired on 12/17/13; and c) Gabapentin expired 1/4/14.  Our review shows you are not currently on any medication for pain control as it was deemed no longer medically necessary.

15

3. Please submit a Health Needs Request (HNR) if you have additional medical concerns or needs which you wish to discuss with a medical provider.

(Doc. 209-1 at 25.)   There is nothing in Ryan's conduct that demonstrates deliberate indifference to Plaintiff's serious medical needs.   Ryan acknowledged, investigated and responded to his concerns.  (*Id*.)  Ryan outlined the follow-up care and medications that had been provided to Plaintiff, and advised Plaintiff that he had been approved and scheduled for a medical appointment, that appropriate management would be provided based on the physiotherapist's findings and recommendations, and that he would continue to be monitored by onsite medical staff.  (*Id*.)

Plaintiff argues that it "reasonable to infer" that Ryan was aware of Corizon's purported failure to provide medical treatment.  (Doc. 209 at 16.)  He claims that Ryan failed to protect him from being assaulted and failed to treat his serious medical needs.  (Doc. 209 at 25.)  He did not allege a failure to protect claim against Ryan.  (Doc. 98 at 28-29.)  The rest is mere speculation.  Ryan is entitled to summary judgment.

**4.      Thomas, Kokemor and Moody are entitled to summary judgment.**

Plaintiff argues that "[e]ach of the named Defendants fell below the standard of care by responding to grievances but never actually offering treatment to him."  (Doc. 209 at 16.)  He offers no evidence to support his argument.  He fails to show that Moody responded to a grievance.  Thomas and Kokemor each responded to his threat to safety grievances, not to medical grievances.  (Doc. 98 at 18, ¶¶ 132-135; Doc. 180-1 at 24-25, 28-29.)

He argues that Thomas and Kokemor failed to protect him from being assaulted.  (Doc. 209 at 25.)  But he did not allege a failure to protect claim against them.  (Doc. 98 at 28-29.)

Plaintiff cites *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) to argue that he has stated a claim against Moody.  (Doc. 209 at 22-23.)  But in *Starr,* there were "many allegations in the complaint detailing what Sheriff Baca knew or should have known, and what Sheriff

1   Baca did or failed to do." *Starr*, 652 F.3d at 1209.  Here, Plaintiff alleges only that Moody
2   was "aware or should have been aware of [his] responsibilities and duties toward an inmate
3   with diabetes and a Traumatic Brain injury but deliberately failed to assure that [Plaintiff]
4   received effective medical evaluations and treatment.  (Doc. 98 at 28, ¶ 209.)  Plaintiff fails
5   to either allege or show that Moody knew that he was purportedly receiving inadequate
6   medical treatment, or that Moody participated in or directed Corizon to provide him with
7   inadequate medical treatment.
8        Thomas, Kokemor and Moody are entitled to summary judgment.
9            **5.      Jasso, Pacheco and Thompson are not parties to this motion.**
10        Plaintiff wrongly claims that "Defendants once again request this Court dismiss
11   Plaintiff's Eighth Amendment threat to safety claim for failure to state a claim."  (Doc. 209
12   at 17.)  Defendants have not previously filed a dispositive motion in this case.  Plaintiff's
13   reference to an order denying a motion to dismiss on qualified immunity grounds filed by
14   Jasso, Pacheco and Thompson in 2016 (*id*. at 16-17) is both misleading and irrelevant.
15   Jasso, Pacheco and Thompson are not parties to this motion.
16            **6.      Puri, Runge, Patrick and Luker are entitled to summary judgment
            on Plaintiff's threat to safety claims.**
17        "Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051,
18   1060 (9th Cir. 2004).  A prison official cannot be found liable under the Eighth Amendment
19   for deliberate indifference to an inmate's safety unless the official knows of facts from
20   which the inference could be drawn that a substantial risk of serious harm exists and also
21   draws the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  An official's failure to
22   alleviate a significant risk that he should have perceived but did not does not give rise to
23   liability under the Eighth Amendment. *Id*. at 838.
24        "In the context of a failure-to-protect claim . . . 'deliberate indifference does not
25   require that the guard or official believe to a moral certainty that one inmate intends to
26   attack another at a given place at a time certain before that officer is obligated to take steps

17

to prevent such an assault,' but it does require that the official 'have more than a mere suspicion that an attack will occur.'" *Finkle v. Ryan*, 174 F.Supp.3d 1174, 1190 (D. Ariz. 2016), citing *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986).

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety." *Id.* (citation and internal quotations omitted). Mere negligent failure to protect an inmate from harm is not actionable under §1983. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1980) (failure to protect an inmate from another inmate).

"[P]rison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Whitley v. Albers*, 475 U.S. 312, 320 (1986) (citation omitted). Prison security measures taken in an attempt to quell a riot "indisputably pose[] significant risks to the safety of inmates and prison staff." *Id.* "Protecting the safety of prisoners and staff involves difficult choices and evades easy solutions." *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir.1986). "[W]hen prison officials respond to an outbreak of violence-the 'deliberate indifference standard does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Id.* (citation omitted). "[A] case involving an individual prisoner's safety from attacks by other prisoners may implicate competing institutional concerns for the safety of prison staff or other inmates." *Id.* at 461(citation omitted). "Removing a prisoner from a hostile or vengeful inmate may protect the prisoner, but the move may endanger others." *Id.* In applying the deliberate indifference standard in this context, the trier of fact must take into account the foregoing considerations. *Id.* at 462.

Plaintiff states that his threat to safety claims arise from injuries he suffered when he was assaulted during a prisoner riot on September 20, 2012.  (Doc. 211 at 2, ¶ 3.) Nonetheless, he contends that he did not admit that the attack on him during this larger riot was sudden (Doc. 209 at 18), and that Defendants did not offer anything in the record to support that it was (*id.*).  He is mistaken.

Defendants cite Plaintiff's own allegations in the third amended complaint that on September 20, 2012, the prison's Internal Command System ("ICS") was activated because of an interracial inmate fight in Unit 3 (Doc. 180 at 13-14, ¶ 68); during the ICS, Defendant Jasso unlocked a gate between the central recreational field, where Plaintiff was walking, and Unit 3 (*id.*); as Jasso unlocked and opened the gate, "a large group of African American inmates *rushed* the unsecured gated [sic] and *forced* their way onto the central recreational field" (*id.*); the mob of inmates *chased* him (*id.*) and stomped and punched him (*id.*); and one inmate repeatedly struck him in the head (*id.*) (emphasis added).  By using the verbs "rushed," "forced," and "chased," Plaintiff admits that the attack was "sudden."

"Courts often turn to dictionaries to determine the plain, unambiguous, and common meaning of terms."  *U.S. v. Wealth and Tax Advisory Services, Inc.*, 526 F.3d 528, 530 (9th Cir. 2008) (citations omitted); *see also Yith v. Nielsen*, 881 F.3d 1155, 1165 (9th Cir. 2018) (when determining the plain meaning of language, courts may consult dictionary definitions.   "Sudden" is commonly defined as "happening or coming unexpectedly" (Merriam-Webster Dictionary (2018)); "marked by or manifesting abruptness or haste" (*id.*); and "made or brought about in a short time" (*id.*)  "Rush" is commonly defined as "to move forward, progress, or act with haste or eagerness or without preparation" (*id.*), and "to hurry in order to get somewhere very quickly" (MacMillan Dictionary (2018)).   "Force" is commonly defined as to "raise or accelerate to the utmost" (Merriam-Webster Dictionary (2018)); "to press, drive, pass or effect against resistance or inertia" (*id.*); "to impose or thrust urgently, importunately, or inexorably" (*id.*); " to achieve or win by strength in

struggle or violence" (*id*.); and "to use physical strength to move somewhere by pushing people or things away" (MacMillan Dictionary (2018)).  "Chased" is commonly defined as "to follow rapidly" (Merriam-Webster Dictionary (2018)), and "to follow someone or something quickly in order to catch them" (MacMillan Dictionary (2018)).

Plaintiff's description of the suddenness of the attack on him is corroborated by an information report dated September 20, 2012 written by Jasso, which Plaintiff submits as evidence.  (Doc. 211 at 5, ¶ 33, Ex. 3 at 1.)  In that report, Jasso wrote that he initiated ICS due to inmate grouping on yard 3.  (*Id*.)  After initiating ICS, he ran to the gate to let staff in. (*Id*.)  He wrote that the inmates rushed the gate, and "[e]verything happen[ed] very fast." (*Id*.)

### i.      Puri is entitled to summary judgment.

Plaintiff argues that it is reasonable to infer that Puri could not render assistance or protect inmates when he locked himself into the control room during the disturbance.  (Doc. 209 at 17.)  Yet, in his separate statement of facts, he alleges that Puri was *giving other officers direction* over the radio from the safety of the control room.  (Doc. 211 at 5, ¶ 35.) He submits Puri's use of force/incident command report continuation sheet dated September 20, 2012.  (Doc.211 at 5, ¶ 32, Ex. 2.)  In his report, Puri describes a riot among different races of inmates but does not mention witnessing an attack on Plaintiff.  (*Id*.)  In sum, there is no evidence to show that Puri was even aware of any risk to Plaintiff specifically.  Puri is entitled to summary judgment.  *See Farmer,* 511 U.S. at 838 (an official's failure to alleviate a significant risk that he should have perceived but did not does not give rise to liability under the Eighth Amendment).

### ii.      Runge is entitled to summary judgment.

Plaintiff argues that it is reasonable to infer that after disarming a group of inmates with weapons, Runge did nothing to stop rioters from spreading to other areas of the yard. (Doc. 209 at 17.)  Plaintiff submits a use of force/incident command report continuation

sheet dated September 20, 2012 written by Runge.  (Doc. 211 at 5, ¶ 38, Ex. 4.)  He then cherry-picks phrases from that report to claim that Runge failed to "prevent" Jasso from opening the gate.  (Doc. 211 at 5, ¶¶ 38-39.)  His version of events is contradicted by the very report on which he purports to rely.  (Doc. 211 at 5, ¶ 38, Ex. 4.)

Runge's report describes a melee and Runge's ongoing efforts to contain it and to help injured inmates.  (*Id.*)  Because Plaintiff so misrepresents Runge's report, Defendants repeat the entire body of that report here:

> [On September 20, 2012,] I CO II Runge was yard officer on Santa Rita.  At around 1708 I was advised by Sgt. Thompson 1189 to assist on yard 3.  As I am heading towards yard 3 COII Jasso initiates ICS on yard 3 for inmate grouping.  Upon arrival I had noticed the yard rioting.  Inmates were assaulting inmates, inmates using weapons on inmates (mops, brooms, crutches, canes, rocks, TVs, boots).  I observed COII Jasso running for the gate and COII Pacheco getting swarmed by inmates.  At this time I had noticed I had COII Peralta and COII Ochoa, and CO II Segura.  Jasso had made it to the gate and I started yelling for Pacheco to get out of there.  As soon as he got to the gate Sgt. Thompson arrived at yard 3.  Myself, CO II Peralta, Ochoa Pacheco enter yard 3 and start giving direct orders to get back and to sit on the ground.  The inmates would not comply with the directive so chemical agents were deployed by myself, COII Peralta, Ochoa and Sgt. Thompson.  I had noticed it was the whites and Mexican inmates fighting the blacks.  The white inmates saw the gate was open and started to run out.  COII Jasso and Sgt. Thompson were holding the gate and were trying to secure it.  One black inmate yelled "rush the gate."  I immediately gave a direct order to "get back" and the inmates did not comply.  I then deployed more chemical agents to contain the inmates in the yard.  The black inmates managed to force the gate open and continued to chase the white and Mexican inmates to the front of the rec. shack.  I followed the inmates along with COII Peralta and Ochoa, and Sgt. Thompson.  Sgt. Thompson tried to defuse the situation and almost had it resided but a white inmate incited the black inmates and they began to fight again.  Sgt. Thompson placed the inmate to the ground with the least amount of force necessary.  A crowd of black inmates swarmed Sgt. Thompson and the white inmate.  I had noticed this and told the inmates to "get back."  The inmates did not comply.  I deployed chemical agent to help Sgt. Thompson get to his feet.  Sgt. Thompson had got to his feet and created distance and began to give orders.  I observed black inmates still assaulting the white inmate on the ground, so I pulled the unconscious inmate out by his feet.  COII

> Ochoa took over with the white inmate by turning him to his side.  At this time yard 4 begins to go off and myself, COII Peralta, Romero, Segura and Sgt. Thompson run to yard 4.  We start to give direct orders when we get a page over the radio that yard 3 inmates were climbing the fence.  We all run back over to yard 3 and begin to give direct orders to "get down."  The black inmates began to throw rocks at the white and Mexican inmates.  The white and Mexican inmates were throwing rocks, TVs, shoes and miscellaneous items from the COIIIs offices they broke the windows to, at the black inmates.  As we got them to comply COII Jasso was pulling injured inmates into the programs building and the black inmates began to run down the yard after a few white inmates.  The black inmates caught up to one white inmate and started assaulting him.  I started shouting directives "stop" and "get back."  After I caught up to the white inmate the black inmates stopped assaulting the white inmate and proceeded to yard 1 to incite more black inmates.  The black inmates went around the large rec field and had stopped by the yard office.  At this time supporting staff helped contain the black inmates in front of the yard office.  We then started to gain control back of Santa Rita and I was then to help locate and report injured inmates.  End of Report.

(*Id.*)  Nothing in the record supports Plaintiff's bare allegation that Runge was deliberately indifferent to his safety.  Runge is not liable even if one strains reason, as Plaintiff does, to argue that he somehow should have prevented Jasso from opening a gate.  *See Davidson*, 474 U.S. at 347-48 (mere negligent failure to protect an inmate from harm is not actionable under § 1983).  Runge is entitled to summary judgment.

### iii.     Luker is entitled to summary judgment.

Plaintiff alleges that Luker was deliberately indifferent because he purportedly did nothing to stop the attack on him until he was unconscious.  (Doc. 209 at 18.)  Plaintiff submits a transcript of a September 20, 2012 interview of Luker by the Criminal Investigation Unit (Doc. 211 at 6, ¶ 49, Ex. 9), and a use of force/incident command report continuation sheet dated September 20, 2012 written by Luker (Doc. 211 at 6, ¶ 52, Ex. 10) to support his allegations against him.  But neither document supports his allegation that Luker was deliberately indifferent.  As set forth in the interview transcript, Luker was in the *kitchen* when he looked over to the Yard 4 exit gate and saw Plaintiff lying face up on the

22

1    ground and another inmate kicking him.  (Doc. 211 at 6, ¶ 49, Ex. 9 at 2.)  Luker then *ran*

2    out of the kitchen with gas.  (Ex. 9 at 3.)  When the inmate who was kicking Plaintiff saw

3    Luker approaching with gas, he took off running.  (*Id.*)  Luker's report is consistent with his

4    interview.  (Doc. 211 at 6, ¶ 52, Ex. 10.)  The record shows that Luker responded reasonably

5    to the risk to Plaintiff.  *See Farmer*, 511 U.S. at 844.  Luker is entitled to summary

6    judgment.

7                    **iv.    Patrick is entitled to summary judgment.**

8            Plaintiff alleges that it is reasonable to infer that Patrick[1] learned about the ICS and

9    did not alert other officers that Plaintiff was an unescorted inmate in the recreational yard

10   and that it was foreseeable that an unescorted inmate could be hurt during the inmate

11   disturbance.  (Doc. 209 at 17.)  Plaintiff submits a use of force/incident command report

12   continuation sheet dated September 20, 2012 written by Patrick (Doc. 211 at 5, ¶ 44, Ex. 8)

13   to support his allegations against him.  Plaintiff twists this report to claim that Patrick *made*

14   the report *at the time that the riot began* (Doc. 211 at 5, ¶ 44) and to imply that Patrick

15   misrepresented that Plaintiff was "secured" (*id.* ¶ 45).  Although the report was written on

16   September 20, 2012—the date of the riot—a plain reading of it shows that it was written

17   *after* the riot, and that Patrick did not misrepresent that Plaintiff was secured in medical.

18   (*Id.*, Ex. 8.)  To the contrary, Patrick reports that an injured Plaintiff was brought into

19   medical.  (*Id.*)  He wrote:

20                  On 9-20-12 at 1511 I COII Petrick 9301 was posted in medical
                    at the time of the disturbance.  I then secured all inmates for
21                  medical insulin turnout in visitation holding.  Once inmates
                    were secured I then secured all medical staff in medical unit.  I
22                  then advised medical supervisor RN Porter to contact all staff
                    from Tucson Complex Units and respond with any available
23                  equipment to include man down bags, AED, and transport
                    equipment.  I was then advised by Sgt. Thompson #1189 that he
24                  was escorting a medical priority inmate [Plaintiff] to medical.
                    With medical staff secure I left medical with a wheelchair and
25                  picked up [Plaintiff] by Santa Rita baseball field.  I then
                    escorted [Plaintiff] via wheelchair to medical so staff could

26

---

[1]  In his third amended complaint, Plaintiff names Petrick as Patrick.  (Doc. 98 at 6, ¶ 25.)

> assess injury's [sic].  Once I had medical response from units and adequate security staff to contain incident I broke the medical staff into groups of four and had one security staff escort medical teams to most severe medical incidents.  When ALS and BLS units arrived to unit [Plaintiff] was transported out of medical via gurney to . . . Triage Area for assessment.  With medical unit all clear of inmates, I assisted operations in accountability of inmates leaving BLS and ALS.  Later I also assisted yard two in count and health and welfare.  This was the extent of my involvement in this ICS.

(*Id.*)

Plaintiff's contention that Patrick should have foreseen that he would be hurt on the recreation field and alerted someone to his whereabouts is unsupported by the record.  Nothing in the record shows that Patrick was aware of a risk to Plaintiff.  All of the evidence shows that he was not.

Plaintiff himself alleges that after he left medical, he could "see the disturbance through the fences and locked gates" (Doc. 98, at 12, ¶ 76), and that when he observed these events, "*he was the only inmate in the central recreation field and, initially, secure from harm by the fences and locked gates of the individual units*" (*id*. ¶ 78) (emphasis added).  He further alleges that he was injured only after a locked gate was opened and a large group of African American inmates "rushed" the gate, "forced" their way onto the field, where they spied and pursued him.  (*Id*. ¶ 81.)  Even assuming that Patrick knew that Plaintiff was on the recreation field and unescorted when ICS was called, there is no evidence that he perceived a risk to Plaintiff.  Plaintiff himself admits that he was secure from the riot and was injured only after inmates forced their way through a gate as it was being unlocked.  Patrick is entitled to summary judgment.  *See Finkle*, 174 F.Supp.3d at 1190 (an official must have more than a mere suspicion that an attack will occur).

## III. The Third Amended Complaint Suffers from the Same Deficiencies as Prior Complaints.

After Defendants filed their motion for summary judgment (Doc. 179), the Ninth Circuit held that the law of the case doctrine does not apply after a plaintiff has filed an amended complaint because that complaint is the only operative one.  *Askins v. U.S.*

1   *Department of Homeland Security*, 899 F.3d 1035, 1043 (9th Cir.2018) (citation omitted).
2   The Court also held, however, that "if the district court determines the amended complaint
3   is substantially the same as the initial complaint, [it] is free to follow the same reasoning and
4   hold that the amended claims suffer from the same legal insufficiencies." *Id.* As set forth in
5   Defendants' motion and as further discussed above, the third amended complaint suffers
6   from the same legal insufficiencies as Plaintiff's previous complaints.  For these reasons,
7   and the others set forth here and in the motion, Defendants are entitled to summary
    judgment.

8   **IV.    Conclusion.**

9           For the reasons set forth above, Defendants Ryan, Moody, McCutcheon, Kokemor,
10  C. Thomas, Puri, Patrick, Luker and Runge are entitled to summary judgment in their favor
11  under Fed. R. Civ. P. 56.

12

13          RESPECTFULLY SUBMITTED this 20th day of September, 2018.

14                                          Mark Brnovich
                                            Attorney General
15

16                                          s/ Michelle C. Lombino
                                            Michelle C. Lombino
17                                          Assistant Attorney General
                                            *Attorneys for Defendants Jasso, Pacheco,*
18                                          *Thompson, Ryan, Moody, McCutcheon,*
                                            *Kokemor, Thomas, Puri, Luker and Runge*
19

20

21

22

23

24

25

26

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on September 20, 2018, I electronically transmitted the attached

3  document to the Clerk of the Court using the ECF System.

4       This document and the Notice of Electronic Filing were automatically served on the

5  same date to the following, who are registered participants of the CM/ECF System:

6  Robert T. Mills, Esq.
Sean A. Woods, Esq.
7  Mills and Woods Law PLLC
5055 North 12th Street, Suite 101
8  Phoenix, AZ 85014
*Attorneys for Plaintiff*

9

10  Anthony J. Fernandez, Esq.
Dustin A. Christner, Esq.
Alyssa R. Illsley, Esq.
11  Quintairos, Prieto, Wood, & Boyer, P.A.
2390 E. Camelback Road, Suite 440
12  Phoenix, AZ 85016
Telephone: (602) 954-5605
13  *Attorneys for Defendant Corizon Health, Inc,*
*Smalley, Ende, Riaz, Rojas, Lewis and Tucker,*
14  *Ryan (limited), Moody (limited), McCutcheon (limited)*

15  Brandi C. Blair
Kenneth Moskow
16  JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
17  Phoenix, AZ 85004
*Attorneys for Defendant Wexford Health Sources, Inc.*

18

19  Kevin C. Nicholas, Esq.
Michael B. Smith, Esq.
Lewis Brisbois Bisgaard & Smith LLP
20  Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
21  Phoenix, AZ 85012
*Attorneys for Defendant Tomas Rawa, M.D.*

22

23

24

25

26

Randy J. Aoyama, Esq.
Bradley L. Dunn, Esq.
Hinshaw & Culbertson LLP
2375 East Camelback Road, Suite 750
Phoenix, AZ 85016
*Attorneys for Defendant Dottie Baker*

s/ L. Fuentes
Secretary to Michelle C. Lombino

#7305755